### HIGHTOWER et ux. v. CITY OF TYLER.

### No. 3867.

Court of Civil Appeals of Texas. El Paso. Nov. 2, 1939.

Rehearing Denied Nov. 23, 1939.

Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellants.

Troy Smith, of Tyler, for appellee.

WALTHALL, Justice.

This suit was brought in the Special District Court of Smith County by C. E. Hightower and wife, Caroline Hightower, against the City of Tyler, a municipal corporation, to recover damages alleged to have been sustained in the sum of $26,215.30 by reason of the matters hereinafter stated. The suit is brought by and in behalf of C. E. Hightower and wife and those for whose use and benefit they sue and named in the petition and in the several sums alleged therein. The material facts involved in the suit and disclosed by the record are substantially as follows:

Prior to the year 1937 C. E. Hightower and wife owned a tract of land adjacent to the City of Tyler, which they desired to subdivide. They prepared a plan of subdivision, laid out streets, dedicated them to the public, and subdivided the property into lots. They laid water and sewer lines in the streets and paved the streets. They sold lots, charging the purchasers thereof with their proportionate part of the cost of laying the water and sewer lines. As residences were built in the addition, they were connected with the water and sewer lines which appellants had constructed. Prior to laying the water and sewer lines appellants requested the City Commission of the City of Tyler to provide for repayment of the cost of constructing water and sewer lines in the subdivision. The City Commission declined the request and declared that where property owners, at their own cost and expense, laid water and sewer lines outside of the City in conformity with plans and

specifications used by the City of Tyler, they would be permitted to connect such lines to the City's system at the city limits, but "without any obligation or agreement on the part of the City to ever take over or pay for any such mains or lines."

Under these circumstances appellants laid the water and sewer lines, and requested the City to connect thereto and furnish service to them and those who had purchased lots from them, which was done. Thereafter, on or about November 22, 1937, the subdivision in question was annexed to and became a part of the City of Tyler by extension of the city limits. On the 24th of November, 1937 appellants sent the City a statement of the cost of the water, sewer and storm-sewer improvements, which they said they constructed in the southwest part of the City of Tyler, which improvements had been made by them in that part of the city recently annexed, saying, "Inasmuch as I understand the City contemplates taking over all of these improvements, it is respectfully submitted that I should be compensated therefor on the basis of the actual cost."

The City Manager, on November 27, 1937, wrote Mr. Hightower declining to take over the water and sewer lines until requested by Mr. Hightower to do so. Hightower never requested the City to take over the lines or cease serving the people living in that area through these lines, but the City continued to furnish service to the inhabitants in the subdivision in the same manner after annexation as before, except that there was a reduction in the amount of rates charged for the service. On the trial Hightower testified that as he recalled the City didn't claim any interest in the lines, and that the City was simply furnishing service to the people Hightower had sold lots to, charging them the regular rate for such service.

Appellants thereupon brought this suit claiming that the City had taken their property. The City answered with a general demurrer and a general denial. The case was tried to the court without a jury. On October 12, 1938 a judgment was entered by the court in favor of the appellee.

The parties to this action agreed that the water and sewer lines involved in this controversy were installed in an area which, prior to November 22, 1937, was outside of and adjacent to the corporate limits of the City of Tyler; that said area was duly and legally annexed to the City of Tyler on November 22, 1937, which annexation was the result of an election conforming to all of the requirements of law. Prior to the annexation the streets in the area had been opened up and were being used by the public. Appellants put in water and sewer lines in the area and paid the cost thereof. Prior to the annexation by the City the area had been subdivided into lots, improved and offered for sale. Some of the lots had been sold and quite a number of residences had been built and were served with water and sewer facilities through the lines constructed by appellants. Appellants did not collect any rent for the use of such facilities, but the users paid charges for water and sewer service to the City of Tyler.

In addition to the above appellant attached to his petition, which he testified as a correct statement of the actual cost of the water mains and sewer lines in question, an itemized statement of the cost of the water mains and sewer lines totaling $26,215.30, for which he sues.

Appellant filed, and in his brief presents, one assignment of error, and submits it as a proposition. It is so considered. It is to the effect that the court erred in not rendering judgment for the plaintiffs for the amount of his damages sued for as above, said amount being the actual cost of the water mains and sewer lines in question, because the undisputed evidence in the case shows the defendant, City of Tyler, has "taken" as that word is used in Article 1, Section 17, of the Constitution of Texas, Vernon's Ann.St., the water mains and sewer lines of the plaintiffs and appropriated them to public use without compensation and without the consent of plaintiffs, and that the water mains and sewer lines, as taken and appropriated, constitute "property" within the meaning of the above article and section of the Constitution.

The applicable part of the above article and section of the Constitution provides: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

In discussing what will constitute a "taking" of one's property for public use, our Texas Supreme Court, in City of East Dallas v. Barksdale, 83 Tex. 117, 18 S.W. 329, 330, said: "No especial formality is required by law to manifest the intention to apply the property to public use, though certain formalities are indispensable to a legal condemnation. The intention may be presumed from the fact that the city au-

thorities, claiming to exercise the right, did actually take and appropriate the property to public use, without disclaiming that such was their purpose."

In the above case the court in the opinion said the defendant (City of Dallas) entered no disclaimer at the trial below and nowhere in its pleadings did it offer to restore the land to the plaintiff or abandon all claim thereto, except as it might show under a paramount right, had this been pleaded. Under the facts of that case the court said the appropriation to public use by the City of Dallas was complete and was done with that intent.

Appellant refers to other authorities which he claims are applicable under the facts of this case, such as McCammon & Lang Lbr. Co. v. Trinity & B. V. R. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.,N.S., 662, Ann.Cas.1913E, 870; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L.Ed. 557, where plaintiff's lands were overflowed as the result of the construction of a dam and legislative authority for its construction was interpreted as a defense to an action for damages; 16 Tex.Jur., page 863, par. 216; Dillon on Municipal Corporations, 5th Ed., Vol. 3, page 1608, Sect. 1017, where the author discusses the meaning of the word "taken"; 20 C.J., page 666, Sect. 138, where the word "taking" or injuring property is discussed as a ground for compensation, and where it is said the general rule deducible from the authorities seems to be that there need not be an actual physical taking, but that any restriction or interruption of the common or necessary use and enjoyment of the property in a lawful manner may constitute a taking for which compensation must be made.

Appellant submits that any taking of the property as "exercise of police power" is a taking within the provision of the Constitution, and refers to Delaware, Lackawana & Western R. Co., v. Morristown, 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523; Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321.

Appellant contends that after the City of Tyler annexed the territory it became its duty to furnish the inhabitants water and sewerage, and that the City has accomplished this by using the water mains and sewer lines of plaintiffs, and has charged and collected rentals from the consumers.

We think the above fairly states appellants' side of the question of the City's liability.

In considering appellee's side of the controversy we are confronted with the questions: Was there such "taking" of the water and sewer lines without appellant's consent? and do the acts of appellant constitute a dedication of the water and sewer lines?

The court made no finding of facts, but each of the two issues were inferentially found by the court, the first in the negative and the second in the affirmative.

The facts clearly show that appellants, the Hightowers, in the matters involved in the two questions above, were engaged in promoting a subdivision soon to be taken into and to become a part of the City of Tyler, and that in order to aid them in selling lots in the subdivision they laid out streets, placed the water and sewer lines therein, paved the streets, and dedicated it to the City of Tyler, that is, set the property as so prepared over to the City by some voluntary act of their own. The evidence shows that appellants connected the water and sewer lines to the City's lines at the city limits after appellants had been advised that the City would furnish water and sewer service through such lines at the rates charged for service in outlying districts; that the City had furnished such service to the Hightowers and to people who had purchased lots from them in the addition before its annexation and had continued to do so after its annexation.

The record does not show that appellants or other owners of the property in the annexed area ever requested the City to cease such service. It is apparent that the water and sewer lines built by appellants were of no use or benefit to any one or to the annexed district unless the City of Tyler rendered service through them. The deeds to the purchasers of lots in the addition carried title to that part of the water and sewer lines in the streets in front of the lots sold. As we interpret the evidence each and every act charged to have been done by the City of Tyler as a basis of liability for compensation for the damages sued for has been in furtherance of the purpose appellants had in mind in building the water and sewer lines, rather than in denial and contradiction of any right possessed by them. Having connected the water and sewer lines with the City's system for such service and received such service, and the City having put the lines to no other use than that contemplated by appellants, and the record showing that appellants made no reservation of any interest or right of use

407

in the lines, we think it necessarily follows that appellants gave consent to the City to make such use of the lines as was made.

█ Consent is an act of the will. It need not be written, but may be spoken, or acted, or it may be implied. Volume 15, C.J. S., Consent, page 979, and authorities under note 83. We think the following authorities bear out our conclusion: Moser v. Greenland Hills Realty ,Co., Tex.Civ.App., 300 S.W. 177, writ refused; McQuillin on Municipal Corporations, Vol. 4, pp. 517, 518; Suburban Real Estate Co. v. Incorporated Village of Silverton, 31 Ohio App. 452, 167 N.E. 474, holding that where the real estate company had sold lots on the representation of furnishing water and that a means had been provided therefor, the real estate company could not claim ownership in the water mains; Ford Realty & Construction Co. v. City of Cleveland, 30 Ohio App. 1, 164 N.E. 62.

The case is affirmed.