**In re Michael HICKS and
Jerry Fazio, Relators.**

**No. 14–07–00590–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 24, 2008.

Rehearing Overruled May 22, 2008.

Jerry Fazio, Dallas, pro se.

R. Brent Cooper, Wesley Butler, Dallas, Edward J. Hershewe, Joplin, Daniel W. Leedy, Bellville, for appellee.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

## MAJORITY OPINION

ADELE HEDGES, Chief Justice.

In this original proceeding, relators, Michael Hicks and Jerry Fazio, seek a writ of mandamus ordering the respondent, Judge Dan R. Beck, to vacate his order of June 18, 2007[1], granting a motion to compel discovery filed by the real parties in interest, Catherine Taylor, individually and as next friend of Charles D. Taylor, and William Heitkamp, Standing Trustee of the United States Bankruptcy Court. Concluding that the discovery is protected by the attorney-client and work product privileges, we conditionally grant the writ.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Taylor Suit

Charles Taylor suffered an injury while on the job. His employer, relator Michael Hicks, was a non-subscriber under the Texas Workers' Compensation Act, and Clarendon Insurance Group, Inc. was Hicks's liability insurer. In 1999, Taylor filed a personal injury suit against Hicks and others regarding Taylor's injuries (the "Taylor suit"). Clarendon assigned relator Jerry Fazio as defense counsel. In 2002, a jury returned a verdict of $20,000,000 in the Taylor suit.

---

1. The order reflects that it was signed June 18, 2006. The district clerk's file stamp reflects that the order was filed June 18, 2007. A review of the record reveals that the order was actually signed June 18, 2007 and the date reflected in the trial judge's signature line is a typographical error.

While the Taylor suit was pending, Hicks and his wife filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code. *See* 11 U.S.C. § 1301, *et seq.* In the bankruptcy proceeding, Hicks assigned to William Heitkamp, as the Chapter 13 trustee, all claims, rights, and causes of action, "including but not limited to ... breach of any duty ... claims of negligence, negligent misrepresentation, fraud, ... insurance bad faith, fiduciary bad faith, fiduciary duty violation of any kind held or to be held against any liable person or entity whether perpetrated upon, resulting to, or incurred by Michael Porter Hicks, Sr., and/or [his wife and two other companies and their agents], for losses as well as any and all liabilities related in any way or by any legal or factual circumstance or source to that certain personal injury of Charles Taylor ... arising from or related to the damages suffered or claims made [in the Taylor suit]...."

In an agreed order signed by the Hickses and the bankruptcy judge, the bankruptcy court ordered that the bankruptcy plan contain the above assignment language, as well as the following language regarding cooperation by the Hickses:

> The Chapter 13 Debtors, Michael Porter Hicks, Sr. and Carolyn Sue Hicks, agree and shall pursuant to this order timely cooperate with the Trustee or any agent or assignee of the Trustee for the Trustee or his assignee to execute instruments so that the Trustee or his assignee is able to receive and be provided information, testimony, documentation, and such rights as may exist for establishing liability and determining damages for the claims assigned, the proof of liability and any damages as well as the basis for legal recovery, legal documentation and evidentiary proof necessary for obtaining legal recovery of money whether by preparation of a documented claim, mediation, private arbitration, settlement or a trial. Further, Michael Porter Hicks, Sr., LMS Rentals, Inc., American Fabritech, Inc. together with Carolyn Sue Hicks further irrevocably and absolutely make such assignment of claims and rights to the Chapter 13 Trustee, William Heitkamp for the Trustee or his assignee to receive all documentation, information and testimony from Michael Porter Hicks, Sr., individually and/or as the agent or officer of LMS Rentals, Inc. and American Fabritech, Inc. Failure to cooperate to provide information, execute instruments of assignment, designation or in discovery for documentation, evidence or rights shall be grounds for objection to a final Chapter 13 or Chapter 7 discharge and the failure to obey this Order.

Several years later, on August 5, 2005, Fazio received a letter from an attorney representing Taylor and Heitkamp along with an "Authorization for Release of Information" signed by Hicks. The attorney requested that Fazio provide a complete copy of the file relating to the Taylor suit. The authorization, signed by Hicks on August 4, 2005, covered any documents or materials "comprising any aspect of the files or client information kept regarding" the Taylor suit and included the following language: "I specifically waive any attorney-client privilege which may exist with regard to any aspect of this authorization." Fazio responded on August 8, attaching a revocation by Hicks of the authorization that he had signed just a few days earlier. In his revocation of the authorization, Hicks stated that he did not wish to waive his attorney-client privilege.

### B. The Underlying Suit

Subsequently, Clarendon filed the underlying interpleader action seeking to tender the remaining insurance policy limits into the registry of the court. In addi-

tion to answering the suit, Taylor and Heitkamp filed counterclaims and cross-claims, asserting fraud and breach-of-contract claims against Clarendon and Hicks. Taylor and Heitkamp also asserted negligent-misrepresentation claims against Hicks, and they alleged that Clarendon, Hicks, and Fazio conspired to defraud Taylor and Heitkamp.

Hicks and Fazio propounded discovery requests, and Taylor and Heitkamp filed a motion for protective order in opposition to these requests, which the trial court heard on June 20, 2006. During the June 20 hearing, Taylor's and Heitkamp's counsel asserted that Hicks agreed to the release of the file in the Taylor suit in the bankruptcy order, and counsel made an oral motion for the trial court to order the file produced to Taylor and Heitkamp. Hicks and Fazio's counsel objected that (1) the only motion Taylor and Heitkamp had filed was their motion for protective order against Hicks and Fazio's discovery requests, (2) Taylor and Heitkamp had not filed a motion seeking to compel production of Fazio's litigation file, nor had they requested that this file be produced in discovery. Taylor's and Heitkamp's counsel later made an oral motion for an order that Hicks sign a release authorizing Fazio to produce the litigation file.

The trial court did not make any ruling at the June 20, 2006, hearing but took the matter under advisement pending the filing of additional briefing. In a subsequent docket-sheet entry, the trial court made a notation indicating that Hicks was to execute an authorization for release of information and Fazio was to "produce entire file from the Taylor lawsuit." Hicks and Fazio filed a mandamus petition in this court challenging this purported ruling by the trial court, but on September 8, 2006, this court denied the petition because there was no written order signed by the trial court.

Subsequently, Taylor and Heitkamp served a request for production on Hicks and Fazio seeking the litigation file from the Taylor suit. In response, Hicks and Fazio asserted only the attorney-client and work-product privileges. Taylor and Heitkamp filed a written motion to compel, requesting that the trial court sign a written order compelling the production of the litigation documents from the Taylor suit that were requested by oral motion at the June 20, 2006 hearing and then by written discovery request. On June 18, 2007, the trial court signed an order compelling Hicks and Fazio to produce the requested discovery. Hicks and Fazio filed this original proceeding claiming the trial court abused its discretion in this order by (1) compelling production of Fazio's litigation file, (2) compelling Hicks to sign an authorization to release privileged information that would waive his attorney-client privilege, and (3) granting Taylor's and Heitkamp's motion for protective order.

## II. ANALYSIS

In their first issue, relators contend the trial court abused its discretion in compelling disclosure of Fazio's litigation file because the file is protected by the attorney-client and work product privileges. Taylor and Heitkamp concede that Fazio's "core" work product is protected, and they have waived discovery of core work product. Taylor and Heitkamp claim, however, that Hicks waived the attorney-client privilege (1) through the assignment of rights in the bankruptcy order, and (2) through the authorization for release of information and documents addressed to Clarendon. At issue in this case is whether Judge Beck's order requiring Hicks to produce Fazio's litigation file would require disclosure of matters that are protected by the attorney-client privilege. If so, the trial court's order would be a clear abuse of discretion for which writ of mandamus may issue.

*See West v. Solito,* 563 S.W.2d 240, 244 (Tex.1978).

## A. Intentional Waiver in the Bankruptcy Order

The attorney-client privilege is governed by Texas Rule of Evidence 503. Under this rule, a "client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." Tex.R. Evid. 503(b)(1). The privilege covers not only direct communications between lawyer and client but also communications involving the client's representatives and the lawyer's representatives, so long as they were made for the purpose of facilitating legal services to the client. TEX.R. EVID. 503(b)(1)(A), (D).

 The attorney-client privilege facilitates free and open communication between attorney and client and assures that the communication will remain confidential to promote effective legal services. *See Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 160 (Tex.1993); Tex.R. Evid. 503. "Our rules recognize that our system of justice relies on a client's privilege to speak frankly and candidly with his or her attorney." *Duncan v. Bd. of Disciplinary Appeals,* 898 S.W.2d 759, 762 (Tex.1995). The privilege may be waived through voluntary disclosure or consent to disclosure under Texas Rule of Evidence 511.

 Taylor and Heitkamp argue that there is no attorney-client privilege to protect confidential matter arising out of Fazio's representation of Hicks because Hicks waived the privilege when he assigned his claims to Heitkamp in the bankruptcy order. An assignment of rights and claims does not automatically include a

waiver of attorney-client privilege unless specifically stated in the language of the assignment. *In re Cooper,* 47 S.W.3d 206, 209 (Tex.App.-Beaumont 2001, orig. proceeding). In *Cooper,* the court of appeals addressed the status of privileged documents in a litigation file following assignment of a *Stowers*[2] claim, and held that the privilege is not abrogated by the assignment. *Id.* The defendant Cooper had given the plaintiff a written assignment of his *Stowers* action, omitting any language that could be construed as an affirmative waiver of Cooper's attorney-client privilege. *Id.* at 208. The trial court held that Cooper's assignment of his claim was tantamount to a voluntary waiver of privilege. *Id.* at 208–09. The court of appeals rejected the proposition that assignment of a claim operates as a waiver of privilege associated with the underlying litigation. *Id.* at 209. Looking to the purpose behind the attorney-client privilege and the specific language of the assignment, the court concluded:

> [T]he assignment's language does not provide for Cooper to waive or assign any right he had to assert his attorney-client privilege. It does not provide for him to voluntarily disclose or consent to disclosure of any significant part of the matters protected by his attorney-client privilege. Nor does it even provide for Cooper to cooperate as to matters giving rise to his claims against his insurers.
>
> *Id.*

 In this case, the language of the bankruptcy order provides neither for Hicks to assign his right to waive the attorney-client privilege, nor for him to voluntarily disclose or consent to disclosure of any significant part of the matters protected by the attorney-client privilege. The only factual distinction between this

---

**2.** *See Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex. Comm'n App.1929) (recognizing the duty of an insurer to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits).

case and *Cooper* is that the bankruptcy order contained language providing for Hicks to cooperate with regard to obtaining documentation to support his assigned claims. However, cooperation language alone is not sufficient to waive the attorney-client privilege.

■ Waiver is the intentional relinquishment of a known right made expressly or indicated by conduct that is inconsistent with an intent to claim the right. *United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). In this case, the language of the assignment in the bankruptcy order does not provide for Hicks to waive or assign any right he had to assert his attorney-client privilege.

Taylor and Heitkamp cite this court's opinion in *In re General Agents Ins. Co. of America, Inc.*, 224 S.W.3d 806 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding), as support for the proposition that an assignment of rights and claims can include an assignment of the right to waive the attorney-client privilege. In that case, the party seeking discovery based its claim to privileged materials on an assignment of claims, alleging that the party that assigned its rights waived its right to assert any privileges by virtue of the assignment. *Id.* at 812. Before the trial court ruled on that contention, the parties filed a second assignment of rights, which specifically included assignment of "attorney/client communication privileges." *Id.* at 813. In a, this court stated that the parties "thought the first assignment was sufficient to transfer the right to waive the privileges in question. Thus, the second assignment is more in the way of a clarification than a completely new agreement." *Id.* at 814, n. 1. This court did not hold that the first assignment was sufficient to transfer the right to waive the attorney-client privilege, but merely recognized that the parties operated under that understanding.

In this case, the assignment language in the bankruptcy order does not specifically waive the attorney-client privilege. Further, the "cooperation" language does not impliedly waive the attorney-client privilege, especially in light of Hicks's intent not to waive the privilege. Therefore, by assigning his rights and claims to the bankruptcy trustee, without specific language addressing the attorney-client privilege, Hicks did not assign the right to waive the attorney-client privilege. *See Cooper*, 47 S.W.3d at 209.

## B. Implied Waiver in the Release to Clarendon

Taylor and Heitkamp further contend that Hicks waived the right to assert the attorney-client privilege by executing an authorization for the release of information and documents to Clarendon. On October 6, 2006, Hicks signed a release containing the following language:

> TO: Clarendon Insurance Group, Inc., their agents, successors, and assigns.
>
> RE: Coverage of and documents and communications concerning Michael Hicks and *Taylor v. Hicks,* Cause No. 97V–100 in the 155th Judicial District, State of Texas

You are hereby fully authorized and requested to permit the examination of, and copying or reproduction, in any manner, whether mechanical, photographic, or otherwise, by the Hershewe Law Firm, P.C., and their authorized agents, any and all portions of the following:

The full contents of any file(s) compiled concerning any insurance policies or coverage extended to me personally or to entities of which I was a principal and concerning the defense provided me during the above-referenced action, including communications with my counsel.

■ The authorization directed Clarendon to produce copies of the underwriting and claims files pertaining to Hicks's insurance and defense including communications with Hicks's counsel. Taylor and Heitkamp argue that the authorization "dispenses with the entire issue of 'attorney-client' privilege" because Hicks consented to disclosure of his communications with counsel to Clarendon. The attorney-client privilege may be waived through voluntary disclosure or consent to disclosure under Rule of Evidence 511. However, the record does not reflect that Hicks consented to disclosure of privileged material in Fazio's litigation file. Taylor and Heitkamp emphasize the language in the release referring to "communications with my counsel." Though the release includes communications with Hicks's counsel, it is clear from context that this language refers to the insurance files compiled by Clarendon, not Fazio's litigation file. Further, the record contains another authorization directed to Fazio, but Hicks did not sign that authorization. Therefore, by executing the authorization for release of Clarendon's file, Hicks did not waive attorney-client privilege with regard to Fazio's litigation file. We sustain relators' first issue.

In their second and third issues, Hicks and Fazio contend that the trial court clearly abused its discretion by, in its June 18, 2007 order, (1) compelling Hicks to sign an authorization to release privileged information that would waive his attorney-client and work-product privileges and (2) granting Taylor's and Heitkamp's motion for protective order. However, the trial court, in its written order, did not compel Hicks to sign an authorization or waiver, nor did the trial court grant a motion for protective order. Because the trial court did not grant the relief challenged in the second and third issues, we overrule these issues.

### III. CONCLUSION

Relators timely asserted the work product and attorney-client privileges. The real parties in interest failed to show waiver of those privileges. The trial court therefore abused its discretion in ordering the privileged documents to be produced. We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order of June 18, 2007, compelling production of the litigation file. We are confident the trial judge will comply and the writ will issue only in the event he does not.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

The relators have not shown that the trial court clearly abused its discretion by compelling the discovery sought. Under applicable precedent, this court should deny the petition for writ of mandamus in its entirety.

#### THE BURDEN OF PROOF

In original mandamus proceedings in courts of appeals, relators have the "heavy" burden of presenting a record and petition that show they are entitled to mandamus relief to correct a clear abuse of discretion by the trial court.[1] The inquiry mandated by precedent is whether the relators (Hicks and Fazio) have established their entitlement to the extraordinary relief of a writ of mandamus, not whether the real parties in interest (Taylor

1. *See* TEX.R.APP. P. 52.3, 52.7; *Canadian Helicopters, Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex.1992) (orig.proceeding); *In re Nelson*, No. 14–04–00578–CV, 2004 WL 1516156, at *1 (Tex.App.-Houston [14th Dist.] July 8, 2004, orig. proceeding) (mem.op.).

and Heitkamp) have shown that the relators are not entitled to mandamus relief.[2] Indeed, though a court of appeals may not grant mandamus relief without requesting a response, the real parties in interest (Taylor and Heitkamp) are not even required to file a response[3] and any action or inaction on their part in responding to the mandamus petition is not a proper basis for granting mandamus relief.[4]

The majority does not mention the relators' heavy mandamus burden, nor does the majority explain how Hicks and Fazio have made the requisite showing that would entitle them to extraordinary relief. Rather, the majority builds its entire analysis on arguments that Taylor and Heitkamp have made in opposition to the mandamus petition. Concluding that the real parties' arguments lack merit, the court then grants mandamus relief. In doing so, the majority incorrectly imposes on Taylor and Heitkamp the burden to show that Hicks and Fazio are not entitled to mandamus relief.[5]

To discharge their burden in a mandamus proceeding, Hicks and Fazio must show, among other things, that the trial court clearly abused its discretion in its order of June 18, 2007.[6] On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court reasonably could have reached only one decision, and not the decision the trial court made.[7] Mandamus review of legal issues is less deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts.[8]

### THE LEGAL STANDARD FOR DETERMINING WHETHER A PARTY HAS WAIVED PRIVILEGE

Hicks and Fazio fail to argue in their petition that Hicks did not waive the attorney-client and work-product privileges by his assignment of claims to Heitkamp in the bankruptcy case.[9] In deciding whether mandamus relief is warranted, this court is required to focus on the arguments presented in the relators' petition.[10]

---

**2.** See *Canadian Helicopters, Ltd.*, 876 S.W.2d at 305; *In re Yamin*, No. 14–07–01035–CV, 2008 WL 442575, at *1 (Tex.App.-Houston [14th Dist.] Feb. 19, 2008, orig. proceeding) (mem.op.).

**3.** See Tex.R.App. P. 52.4.

**4.** See, e.g., *In re Yamin*, 2008 WL 442575, at *1(denying mandamus petition because "[r]elator has not established his entitlement to the extraordinary relief of a writ of mandamus").

**5.** See *Canadian Helicopters, Ltd.*, 876 S.W.2d at 305; *In re Yamin*, 2008 WL 442575, at *1.

**6.** See *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex.2004).

**7.** *Walker*, 827 S.W.2d at 840.

**8.** *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex.2005).

**9.** This court correctly overrules the second and third issues because the trial court did

not grant the relief challenged by Hicks and Fazio in these two issues. *See ante* at p. 796. In the argument under their second issue, Hicks and Fazio make conclusory statements that Hicks has not waived the attorney-client and work-product privileges. In their petition, Hicks and Fazio do not put forth any argument, analysis, record citations or legal authority in support of the proposition that Hicks did not waive these privileges through his written assignment of claims to Heitkamp. *See* Tex.R.App. P. 52.3(h); *In re Citizens Supporting Metro Solutions, Inc.*, No. 07–00190–CV, 2007 WL 4277850, at *4 (Tex.App.-Houston [14th Dist.] Oct. 18, 2007, orig. proceeding) (mem.op.) (holding that relator waived argument because its petition did not contain appropriate citations to the record and authorities). By failing to assert this argument, Hicks and Fazio have waived it.

**10.** *See* Tex.R.App. P. 52.3, 52.7; *Canadian Helicopters, Ltd.*, 876 S.W.2d at 305; *Walker*, 827 S.W.2d at 837.

However, the majority focuses on whether Hicks waived the attorney-client and work-product privileges through his written assignment of claims to Heitkamp. Moreover, even if Hicks and Fazio had made this argument, it would lack merit. Under the Texas Rules of Evidence, Hicks waives the privilege as to the litigation file if he "consents to disclosure of any significant part of the [litigation file] unless such disclosure itself is privileged." [11]

The majority concludes that Hicks did not waive any privilege because the bankruptcy court order does not contain language expressly and specifically waiving the attorney-client privilege. See ante at pp. 794–95. Texas Rule of Evidence 511, entitled "Privileges Recognized Only as Provided," contains no requirement that the consent to disclosure be express.[12] Under the unambiguous language of that rule, Hicks could waive privileges by consenting to disclosure in the bankruptcy court order, even if the order contained no language specifically waiving privilege.[13] Indeed, the Texas Supreme Court has held that "consent" may be given expressly or impliedly, in writing, by spoken word, or by action.[14] Likewise, this court recently held that a party waived the attorney-client and work-product privileges by executing an assignment of its privileges to another party, even though this assignment did not specifically state that any party was waiving a privilege.[15] The majority's conclusion that a party must express or specify an intent to waive privilege is inconsistent with both the unambiguous language of the applicable rule and precedent from this court and the Texas Supreme Court.[16]

Waiver may be express or implied. Therefore, if in the bankruptcy court order Hicks impliedly consented to the disclosure of any significant part of the litigation file, or if he assigned his right to assert the attorney-client privilege in the litigation file to a third party, then Hicks waived the privilege as to this file.[17] In the bankruptcy court order and through the Chapter 13 bankruptcy plan, Hicks assigned to Heitkamp all claims arising from or related to the claims made in the Taylor Suit,[18] which would include all of his claims against Fazio arising from or related to the claims made in that suit. In the order, Hicks

---

11. See Tex.R. Evid. 511. Because the applicable law equates this consent to disclosure with waiver of any claim of privilege, the majority's use of the common law definition of waiver is incorrect. See ante at pp. 794–95 (applying majority's interpretation of common law definition of waiver).

12. See Tex.R. Evid. 511.

13. See id.

14. See Hightower v. City of Tyler, 134 S.W.2d 404, 407 (Tex.Civ.App.-El Paso 1939, writ ref'd); see also Yancy v. United Surgical Partners Int'l, Inc. 236 S.W.3d 778, 786 n. 6 (Tex.2007) (holding that, in cases decided after 1927, Texas Supreme Court's notation of "writ refused" denotes that the court of appeals opinion is the same as a precedent of the Texas Supreme Court); State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 707 (Tex. 1996) (referring to a writ refused court of appeals opinion as an opinion of the Texas Supreme Court).

15. See In re General Agents Ins. Co. of Am., Inc., 224 S.W.3d 806, 813–14 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding).

16. See Tex.R. Evid. 511; Hightower, 134 S.W.2d at 407; In re General Agents Ins. Co. of Am., Inc., 224 S.W.3d at 813–14.

17. See Tex.R. Evid. 511; Hightower, 134 S.W.2d at 407; In re General Agents Ins. Co. of Am., Inc., 224 S.W.3d at 813–14.

18. As used herein, the "Taylor Suit" refers to the personal-injury lawsuit filed by Charles Taylor against various parties, including his employer, relator Michael Hicks, a non-subscriber under the Texas Workers' Compensation Act.

makes this assignment for the benefit of unsecured, nontax creditors in the Hicks bankruptcy case. Hicks also agreed to timely cooperate with Heitkamp to execute instruments so that Heitkamp would be able to obtain "information, testimony, documentation, and such rights as may exist for establishing liability and determining damages for the claims assigned, the proof of liability and any damages as well as the basis for legal recovery, legal documentation and evidentiary proof necessary for obtaining legal recovery of money whether by preparation of a documented claim, mediation, private arbitration, settlement or a trial." It was not an abuse of discretion for the trial court to have concluded that the information and documentation needed to determine and prove damages and liability as to all claims by Hicks against Fazio includes the information and documents contained in Fazio's litigation file for the Taylor Suit. Likewise, the trial court did not abuse its discretion by impliedly determining that, by agreeing to cooperate with Heitkamp so that Heitkamp could obtain documents that include the litigation file, Hicks impliedly consented to the disclosure to Heitkamp of the litigation file, thus waiving the privileges in question.[19]

In addition, Hicks irrevocably assigned to Heitkamp rights "to receive all documentation, information, and testimony from [Hicks]." In the bankruptcy court order, Hicks also agreed that failure to cooperate in providing information to Heitkamp would be a failure to obey the order.

The trial court did not abuse its discretion by impliedly determining that, by assigning to Heitkamp the rights to receive all documentation and information from Hicks and by agreeing to provide this information to Heitkamp, Hicks impliedly consented to the disclosure to Heitkamp of the entire litigation file, thus waiving the privileges in question.[20] In the alternative, Hicks's assignment to Heitkamp of the rights to receive all documentation and information from Hicks carried with it Hicks's right to assert privileges that otherwise would preclude disclosure of this information to Heitkamp. Consequently, Hicks may no longer assert these privileges.[21]

In analyzing the bankruptcy court order, the majority relies on Hicks's purported "intent not to waive the privilege." [22] Though the majority fails to explain why it believes Hicks did not intend to waive the privilege when he agreed to the assignment in the bankruptcy court order, the only apparent basis for finding such an intent is the affidavit of Hicks's bankruptcy counsel, in which Hicks's counsel testifies as to his belief that Hicks had such an intent. In any event, because the bankruptcy court order does not state this intent, any basis for finding such an intent is necessarily extrinsic to the order. No party has argued that the bankruptcy court order is ambiguous, and the majority does not conclude that the bankruptcy court order is ambiguous. Thus, the majority errs in granting mandamus relief based on its consideration of extrinsic evidence as to Hicks's alleged intent not to waive any privilege.[23]

19. *See* Tex.R. Evid. 511; *Hightower,* 134 S.W.2d at 407 (holding that subdivision developer consented to city's use of water and sewer lines even though developer never expressly consented to this use).

20. *See* Tex.R. Evid. 511; *Hightower,* 134 S.W.2d at 407.

21. *See In re General Agents Ins. Co. of Am., Inc.,* 224 S.W.3d at 813–14.

22. *See ante* at p. 795.

23. *See Reiss v. Reiss,* 118 S.W.3d 439, 441–42 (Tex.2003) (holding that unambiguous decree must be enforced literally, without consideration of matters extrinsic to the decree); *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 422 (Tex.2000) (holding that language of unambiguous judgment must be enforced without consideration of extrinsic evidence as to

Hicks and Fazio and the majority rely on *In re Cooper*, 47 S.W.3d 206 (Tex.App.-Beaumont 2001, orig. proceeding), a case in which the judgment debtor assigned to his judgment creditor his *Stowers*[24] claim against his insurers.[25] In the assignment document, the judgment debtor did not (1) agree to cooperate with the judgment creditor in investigating or prosecuting the assigned claim, (2) expressly waive any privilege, or (3) agree to voluntarily disclose or consent to disclosure of any significant part of matters protected by privilege. *See id.* at 209. The *In re Cooper* court held that, "[u]nder these circumstances," the trial court abused its discretion by concluding the judgment debtor had waived his attorney-client privilege by making the assignment. *See id.* According to the majority, *In re Cooper* stands for the proposition that, for parties to an assignment of rights and claims to effectively waive the attorney-client privilege, they must state specifically in the language of the assignment that the attorney-client privilege is waived. *See ante* at p. 794. The *Cooper* opinion does not stand for or support this proposition. *See In re Cooper*, 47 S.W.3d at 208–09. The holding in *In re Cooper* was limited to the circumstances before the court; the *Cooper* court never stated that a party must express or specify an intent to waive the privilege before there can be a voluntary disclosure or consent to disclosure under Rule 511.[26] In the case at hand, Hicks agreed to cooperate with Heitkamp to facilitate Heitkamp's receipt of documents that include the litigation file. Because the language of the parties' agreement and the circumstances of this case differ significantly

from the circumstances in *In re Cooper*, that case is not on point.

Even if Hicks and Fazio had argued in this proceeding that the trial court clearly abused its discretion by compelling discovery because there is no evidence that Hicks waived the attorney-client privilege by his assignment of claims to Heitkamp in the bankruptcy case, for the reasons stated above, this argument would lack merit.

ARGUMENTS ASSERTED IN THE<br>MANDAMUS PETITION

In their mandamus petition, Hicks and Fazio assert the trial's order compelling production of Fazio's litigation file constitutes a clear abuse of discretion for the following reasons:

(1) The requested discovery is a "fishing expedition" and is not reasonably calculated to lead to the discovery of admissible evidence.

(2) The trial court erroneously concluded that Hicks had assigned his claims against Fazio to Heitkamp.

(3) Any alleged assignment of a legal malpractice claim against Fazio would be invalid under Texas law and therefore Taylor and Heitkamp are not entitled to discovery seeking evidence in support of potential legal malpractice claims against Fazio.

(4) Because Taylor and Heitkamp do not have a valid legal malpractice claim against Fazio, the requested discovery is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Hicks and Fazio first contend the trial court abused its discretion by compelling

---

its meaning); *Harrison v. Manvel Oil. Co.*, 142 Tex. 669, 180 S.W.2d 909, 914 (1944) (same as *Gulf Ins. Co.*).

**24.** *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved).

**25.** *In re Cooper*, 47 S.W.3d 206, 207–08 (Tex. App.-Beaumont 2001, orig. proceeding).

**26.** *See id.*

disclosure of Fazio's litigation file, arguing the requested discovery is a "fishing expedition" and is not reasonably calculated to lead to the discovery of admissible evidence. In response to the discovery requests in question, however, Hicks and Fazio objected only on the grounds of the attorney-client and work-product privileges,[27] and the trial court has not concluded there is good cause to excuse Hicks's and Fazio's failure to assert any other discovery objections. Therefore, by their failure to timely object on any basis other than attorney-client and work-product privilege, Hicks and Fazio effectively waived any complaints that the requested discovery is overbroad, a "fishing expedition," is not reasonably calculated to lead to the discovery of admissible evidence, and any objection other than the two privileges they asserted.[28] Because of this waiver, the trial court did not clearly abuse its discretion by compelling discovery that allegedly amounted to a "fishing expedition" into irrelevant matters.

Under their first issue, Hicks and Fazio also assert that the trial court clearly abused its discretion by concluding the bankruptcy court order contains an assignment by Hicks to Heitkamp of his claims against Fazio. Hicks and Fazio claim that the record shows that Hicks did not assign any such claims to Heitkamp. Hicks and Fazio base this argument on extrinsic evidence regarding the meaning of the bankruptcy court order, namely statements made by Hicks's bankruptcy counsel and copies of prior drafts of a proposed bankruptcy court order.

As noted above, when a court order is unambiguous, as in this case, the court should give effect to the plain meaning of the order, and not consider extrinsic matters.[29] Under the unambiguous language of the bankruptcy order, Hicks assigned to Heitkamp all claims *"held or to be held against [Fazio] whether perpetrated upon, resulting to, or incurred by Michael Porter Hicks, Sr., and/or [his wife and two other companies and their agents], for losses as well as any and all liabilities related in any way or by any legal or factual circumstance or source to that certain personal injury of Charles Taylor ... arising from or related to the damages suffered or claims made [in the Taylor Suit] ...."*[30] Contrary to Hicks's and Fazio's arguments, the language of the bank-

---

**27.** Taylor and Heitkamp agree that they are not seeking to discover "core work product." *See* Tex.R. Civ. P. 192.5(b), (c) (defining core work product that is not discoverable); *In re Bexar County Crim. Dist. Attorney's Office,* 224 S.W.3d 182, 187–88 & n. 21 (Tex.2007) (discussing definition of core work product and exceptions to this definition). Therefore, the majority correctly concludes that the trial court has not compelled Hicks and Fazio to produce any core work product, and this court need not address any issues relating to core work product.

**28.** *See* Tex.R. Civ. P. 193.2; *Bielamowicz v. Cedar Hill Indep. Sch. Dist.,* 136 S.W.3d 718, 723 (Tex.App.-Dallas 2004, pet. denied). Rule 193.2(f) provides that a party should not object to a discovery request on the grounds that it calls for production of material that is privileged but should instead comply with Rule

193.3. *See* Tex.R. Civ. P. 193.2(f); *see also* Tex.R. Civ. P. 193.3. A party objecting to the production of privileged material does not waive the privilege but must comply with Rule 193.3 when the error is pointed out. Tex.R. Civ. P. 193.2(f); *see also* Tex.R. Civ. P. 193.3. The record in this mandamus proceeding does not reflect that any party has pointed out to Hicks and Fazio this error in objecting to the discovery requests. This error is not relevant to the analysis in this opinion, and it does not affect the waiver by Hicks and Fazio of any other objections.

**29.** *See Reiss,* 118 S.W.3d at 441–42; *Gulf Ins. Co.,* 22 S.W.3d at 422; *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 546 (Tex. App.-Dallas 1990, writ denied).

**30.** Emphasis added.

ruptcy court order shows that Hicks assigned to Heitkamp any claims he had against Fazio. Accordingly, the trial court did not clearly abuse its discretion by concluding that the bankruptcy court order contains an assignment by Hicks to Heitkamp of Hicks's claims against Fazio.[31]

Under their first issue, Hicks and Fazio also assert that any alleged assignment of a legal malpractice claim against Fazio would be invalid under Texas law and therefore Taylor and Heitkamp are not entitled to discovery seeking evidence in support of potential legal malpractice claims against Fazio. In addition, Hicks and Fazio argue that, because Taylor and Heitkamp do not have a valid legal malpractice claim against Fazio, the requested discovery is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Again, Hicks and Fazio did not timely assert objections that Taylor and Heitkamp were improperly seeking evidence in support of an invalid malpractice claim or that the requested discovery is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[32] Therefore, Hicks and Fazio waived these discovery objections. The trial court did not clearly abuse its discretion by compelling discovery when these objections were not even asserted.[33]

Finally, the trial court could not possibly have erred by compelling discovery so that Taylor and Heitkamp could look for evidence regarding legal malpractice claims against Fazio because that is not the basis upon which the trial court compelled the discovery in question.

For these reasons, Hicks and Fazio have not met the mandamus standard with respect to any of the grounds asserted in their petition for mandamus relief.

## CONCLUSION

The court correctly overrules the second and third issues, concluding that in the June 18, 2007 order, the trial court did not compel Hicks to sign any authorization or waiver and that the trial court did not grant any motion for protective order.[34] Although the court in this case denies the mandamus relief sought in the second and third issues, the court conditionally grants the entire mandamus petition. Even if this court's granting of mandamus relief as to the first issue were correct, the court

---

**31.** In this argument, Hicks and Fazio do not assert that any alleged assignment would be invalid under Texas law.

**32.** The trial court has not concluded there is good cause to excuse Hicks's and Fazio's failure to assert any discovery objections.

**33.** *See* Tex.R. Civ. P. 193.2; *Bielamowicz,* 136 S.W.3d at 723. This court need not and does not address the extent, if any, to which Hicks's assignment of claims is invalid because it violates Texas public policy.

**34.** In their argument as to how the trial court allegedly erred by compelling Hicks to sign an authorization, Hicks and Fazio make a conclusory statement that, even if Hicks waived the attorney-client and work-product privileges, Fazio properly has asserted the work-product privilege on his own. The petition does not contain any argument or analysis in support of this proposition, and therefore the argument is waived. *See In re Citizens Supporting Metro Solutions, Inc.,* 2007 WL 4277850, at *4. In addition, Hicks and Fazio do not present argument or analysis in their petition as to how the trial court clearly abused its discretion by impliedly determining that Taylor and Heitkamp showed that they have a substantial need for the materials in the preparation of their case and that they are unable without undue hardship to obtain the substantial equivalent of these materials by other means. *See* Tex.R. Civ. P. 192.5(b); *In re Bexar County Crim. Dist. Attorney's Office,* 224 S.W.3d at 187–88. Therefore, Hicks and Fazio have waived this argument. In any event, as discussed above, even if Hicks and Fazio had presented argument on this issue in their petition, the trial court did not clearly abuse its discretion by impliedly concluding that Taylor and Heitkamp made this showing.

still should conditionally grant the petition only in part and deny the petition as to the other relief sought.

As to the first issue, Hicks and Fazio have not shown that the trial court clearly abused its discretion by compelling production of the discovery in question. Therefore, the court should deny Hicks's and Fazio's petition for writ of mandamus. In conditionally granting mandamus, this court contradicts mandatory precedent by (1) imposing on real parties in interest Taylor and Heitkamp the burden to show that relators Hicks and Fazio are not entitled to mandamus relief, (2) adding to Rule 511 an unwritten requirement that the consent to disclosure be express, and (3) improperly considering extrinsic evidence regarding the meaning of the unambiguous bankruptcy court order. Under applicable precedent, this court instead should deny the petition for writ of mandamus in its entirety. Because it does not, I respectfully dissent.