Affirmed and Memorandum Opinion filed August 5, 2008








Affirmed
and Memorandum Opinion filed August 5, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00924-CV

____________

 

KIRBY LAKE DEVELOPMENT, LTD., MITER
DEVELOPMENT COMPANY, AND TAYLOR LAKE, LTD., Appellants

 

V.

 

CLEAR LAKE CITY WATER AUTHORITY, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 866299

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from the dismissal of
inverse-condemnation claims filed by three developers against a water
authority.  We conclude that the facts alleged in the petition show an
affirmative defense to the inverse-condemnation claims, namely that the developers
consented to any alleged taking by the water authority.  Accordingly, we affirm
the trial court=s dismissal for lack of subject-matter
jurisdiction.

 








I.  Factual and Procedural Background

Appellants Kirby Lake Development, Ltd., Miter Development
Co., and Taylor Lake, Ltd. (hereinafter collectively ADevelopers@) are development
companies that own property within the boundaries of appellee Clear Lake City Water
Authority (hereinafter the AAuthority@).  The Authority is a conservation and reclamation district under article 16,
section 59 of the Texas Constitution that operates as a water control and
improvement district under Texas statutes.[1] 
The Authority and each of the Developers entered into respective agreements
entitled ASales Agreement and Lease of Facilities@ (hereinafter
collectively the AAgreements@).  The Developers
sued the Authority in Harris County District Court in 2005, asserting, among
other things, claims for alleged breaches of the Agreements by the Authority
and inverse-condemnation claims.  In a plea to the jurisdiction, the Authority
asserted that the district court lacked subject-matter jurisdiction over the
inverse-condemnation claims.  The Developers then nonsuited those claims and
filed them in the trial court below.  The Authority asserted various defenses,
including governmental immunity and consent.  The Authority filed a plea to the
jurisdiction, in which it asserted, among other things, that the Developers= pleadings show
consent to the alleged taking.  The trial court granted the Authority=s plea to the
jurisdiction and dismissed the claims for lack of subject-matter jurisdiction.   

II.  Issues for Review

On appeal, the Authority presents the following issues:

(1)     Where a governmental
authority unequivocally repudiates its contractual obligation to pay for
private property, and instead announces its intention to use such property in
perpetuity without any compensation, does a valid inverse-condemnation claim
arise?

(2)     Did the
trial court err in dismissing the Developers=
inverse-condemnation claims for want of subject-matter jurisdiction?








III.  Standard of Review

We
review a trial court=s ruling on a plea to the jurisdiction de novo. Tex. Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  When
a party has filed a plea to the jurisdiction challenging the pleadings, a
reviewing court  must construe the pleadings liberally in favor of the pleader
and look to the pleader=s intent.  See id.  If the facts alleged affirmatively
demonstrate the trial court=s jurisdiction to hear the cause, the plea to the
jurisdiction must be denied.  See id.  If the pleadings do not
contain sufficient facts to affirmatively demonstrate the trial court=s jurisdiction, but do not
affirmatively demonstrate incurable defects in the jurisdiction, the issue is
one of pleading sufficiency and the plaintiffs should be afforded the
opportunity to amend.  See id.  If the pleadings affirmatively negate
the existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing an opportunity to amend.  See id. at 227.  

  If in
its plea to the jurisdiction a party challenges the existence of jurisdictional
facts, the reviewing court considers relevant evidence submitted by the parties
when necessary to resolve the jurisdictional issues raised, as the trial court
is required to do.  See id.  If the evidence creates a fact question
regarding the jurisdictional issue, then the plea to the jurisdiction must be
denied.  See id. at 227B28.  However, if the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue, then
the court rules on the plea to the jurisdiction as a matter of law.  Id. at
228.  In ruling on a plea to the jurisdiction, a court does not consider the
merits of the parties= claims.  See id. at 226B28; County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  

 

 

 

 








IV.  Analysis

In
their petition, did the Developers affirmatively negate jurisdiction by
pleading facts which constitute consent to any alleged taking?

The Authority asserts, and the Developers do not deny, that
the Authority is a political subdivision of the State that is generally
entitled to assert governmental immunity.  See Clear Lake City Water Author.
v. Friendswood Dev. Co., No. 14-07-00096-CV, CS.W.3dC, C, 2008 WL 2130435,
at *4 (Tex. App.CHouston [14th Dist.] May 22, 2008, pet.
filed) (concluding the Authority is generally entitled to assert governmental
immunity).  When a political subdivision of the State is immune from suit under
the doctrine of governmental immunity, a court lacks subject-matter
jurisdiction.[2] 
Tex. Dep=t of Transp. v. Jones, 8 S.W.3d 636,
638 (Tex. 1999).  Governmental immunity has two components: immunity from
liability and immunity from suit.  Tooke v. City of Mexia, 197 S.W.3d
325, 332 (Tex. 2006).  Immunity from suit bars suit against the entity
altogether.  Id.  When a governmental entity enters into a contract, it
waives immunity from liability and voluntarily binds itself, just as any other
party would, to the terms of the contract, but that entity does not thereby
waive immunity from suit.  Id.  For there to be a waiver of immunity
from suit in this context, there must be a clear and unambiguous waiver of
immunity from suit as to the claims in question.  See Tex. Gov=t Code Ann. ' 311.034 (Vernon
Supp. 2007) (providing that a statute shall not be construed as a waiver of
sovereign immunity unless the waiver is effected by clear and unambiguous
language); Tooke, 197 S.W.3d at 332B33 (requiring clear
and unambiguous language to waive governmental immunity).  








There is a clear and unambiguous waiver of immunity from
suit for inverse-condemnation claims within the ambit of article I, section 17
of the Texas Constitution (hereinafter ATakings Clause@).  See Tex. Const. art. I, ' 17.  Therefore,
governmental immunity does not shield the Authority from a claim for compensation
under the Takings Clause.  See Tex. Const. art. I, ' 17; State v. Holland, 221
S.W.3d 639, 643 (Tex. 2007).  The Takings Clause mandates that A[n]o person=s property shall
be taken, damaged or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person . . . .@  Tex. Const. art. I, ' 17.  Generally,
governmental entities compensate property owners before appropriating their
property, either by paying a mutually agreed price or by paying the value as
determined in a statutory condemnation proceeding.  See Westgate, Ltd. v. State, 843 S.W.2d 448, 452 
(Tex. 1992).  If, however, these entities appropriate property without paying
adequate compensation, the property owner may recover the resulting damages
through an inverse-condemnation claim.  See id.  An inverse condemnation
may occur when a governmental entity physically appropriates or invades the
property, or when it unreasonably interferes with the landowner=s right to use and
enjoy the property, such as by restricting access or denying a permit for
development.  See id.  To properly assert an inverse-condemnation claim
against a governmental entity, a party must plead the following elements:  (1)
the governmental entity intentionally performed an act in the exercise of its
lawful authority; (2) that resulted in the taking, damaging, or destruction of
the party=s property; (3) for public use.  See Gen.
Servs. Comm=n v. Little-Tex Insulation Co., 39 S.W.3d 591,
598 (Tex. 2001); Steele v. City of Houston, 603 S.W.2d 786, 790B91 (Tex. 1980); see
also State v. Hale, 146 S.W.2d 731, 736 (1941).  Consent to any alleged
taking is an affirmative defense.  See City of Houston v. Crabb,
905 S.W.2d 669, 674B75 (Tex. App.CHouston [14th
Dist.] 1995, no writ).  The Authority pleaded this defense in the trial court
below. 

In their live petition in the trial court, the Developers
pleaded as follows:








!       The Authority entered into the Agreements
with the Developers.

!       Under these Agreements, the Developers agreed
to construct, and the Authority agreed to purchase from the Developers, water,
sewer, and drainage facilities that serviced homes built on the Developers= land (hereinafter the AFacilities@).

!       Under the Agreements, the Authority agreed to
pay for the Facilities from proceeds of the sale of bonds.  The Authority
obligated itself to include Ain any bond election@ that it held Aa bond authorization in an amount
sufficient to pay the purchase price of the Facilities.@ The Authority also agreed to Ainclude any purchase of the
Facilities in any bond issue sold subsequent to such election.@

!       Pending the purchase of the Facilities, the
Agreements allow the Authority to lease the Facilities at no charge, and to use
them to provide water, wastewater, and drainage services to Authority
residents.  At all relevant times, based on such services, the Authority has
levied and collected taxes and user fees from homeowners serviced by the
Facilities.

!       The Authority held a bond election in May
1998, and then again in October 1998.  Each of those elections, if successful,
would have authorized the issuance of bonds sufficient to permit the Authority
to honor its obligation to purchase the Facilities under the Agreements. 
However, in the weeks leading up to those elections, members of the Authority=s board of directors campaigned
against the bond-authorization measures, and on each occasion the measures
failed.  

!       The Developers sued the Authority and urged
that, under the Agreements, the Authority still was obliged to purchase the
Facilities out of other revenues available to the Authority, even absent the
authorization of a bond issuance.

!       Trial in that case resulted in a jury verdict
in favor of the Developers, but this court reversed the trial court=s judgment.  See Clear
Lake Water Auth. v. Kirby Lake Dev., Ltd., 123 S.W.3d 735, 756 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied).  This court held that, though the Authority was obliged to include the
bond authorization measure in its elections, it was not obliged to purchase the
Facilities out of other Authority funds in the event that such an election were
to fail.








!       This court did not grant the Authority a
perpetual license to abrogate its contractual obligations.  It did not rule
that, because the bond-authorization measures had failed in 1998, the Authority
was therefore relieved from honoring its agreements to purchase the
Facilities.  In this court=s view, by contract (1) the Developers had agreed to await payment
until a successful bond election occurred, and (2) the Authority had agreed to
include bond authorization measures in its elections until such time as bonds
were authorized permitting purchase of the Facilities.

!       The Authority scheduled another bond
authorization election in September 2004.  However, the Authority did not
include any item authorizing the bonds that would have required to purchase the
Facilities. Upon learning of this omission, the Developers lodged a protest
with the Authority, pointing to the language of the Agreements and urging that
a bond-authorization measure be added to the ballot.

!       The Authority, however, determined to walk
away from its contractual obligations, advising the Developers that it Aalready had satisfied@ its obligation to seek voter
approval to issue bonds for purchase of the Facilities.  The Authority
underscored its repudiation of its obligations under the Agreements in a
written stipulation in another case in which it stated that it considered any
obligation to include a bond-authorization measure to have been satisfied
before September 2004. 

!       Although it has disclaimed any further
obligation to seek voter approval of bonds to purchase the Facilities, the
Authority continues to use the Facilities, with no payment to the Developers.

!       As a result of this repudiation of the Authority=s contractual obligation, the
Developers filed suit in the district court asserting breach of contract and
quantum meruit.  

!       The
Authority=s use of and exercise of dominion and control over the
Facilities constitutes a taking of the Facilities without compensation in
violation of the Takings Clause.  The Authority=s actions are
intentional  and those actions were a proximate cause of the taking of the
Facilities, which were owned by the Developers at the time of the taking.  The
Developers did not consent to the taking, and received no compensation for the
taking, which was for a public use.  The Developers seek damages for the
property taken.








In reviewing the Authority=s challenge to the
Developers= pleadings, we construe the pleadings liberally in
their favor and look to their intent.  See Miranda, 133 S.W.3d at 226. 
In their petition, the Developers allege that, under the Agreements, the
Authority is allowed to lease and use the Facilities at no charge until the
Authority purchases the Facilities and that the Authority has not purchased the
Facilities.  Presuming without deciding that the Authority=s alleged breaches
of the Agreements resulted in recoverable contract damages to the Developers,
the facts alleged in the Developers= petition
affirmatively negate the
trial court=s subject-matter jurisdiction by showing that the Developers agreed to
allow the Authority to lease and use the Facilities free of charge until the
Authority purchases the Facilities.  See General Servs. Comm=n, 39 S.W.3d at 598B99 (holding that, even presuming that
facts alleged in petition were true, plaintiff did not allege a claim within
the scope of the Takings Clause because it did not plead sufficient intent);  State
v. Steck Co., 236 S.W.2d 866, 869 (Tex. Civ. App.CAustin 1951, writ ref=d) (holding by Texas Supreme Court
that takings claim failed as a matter of law because the State took possession
of the property in question under a contract with the plaintiff and therefore
with the plaintiff=s permission and consent);  Hightower v. City of Tyler,
134 S.W.2d 404, 407 (Tex. Civ. App.CEl Paso 1939, writ ref=d) (holding by Texas Supreme Court
that takings claim failed because, as a matter of law, developers consented to
the City of Tyler using the water and sewer facilities installed by
developers). Under the applicable standard of review, the facts alleged in the
Developers= petition affirmatively negate the trial court=s subject-matter jurisdiction by showing that the
Developers consented to any alleged taking by the Authority.  See Little-Tex
Insulation Co., 39 S.W.3d at 598B99; Steck Co.,
236 S.W.2d at 869;  Hightower, 134 S.W.2d at 407.








The Developers argue that the Authority has breached the
Agreements by refusing to submit to the voters the bond-authorization measures that, if approved, would require the
Authority to purchase the Facilities.  The construction of the Agreements is
the subject of another lawsuit; nonetheless, under the Authority=s construction of the Agreements,
there has been no breach of the Agreements and the Authority is not required to
purchase the Facilities.  Under the Developers= petition, the Agreements are still
in effect.  The petition shows that rather than rescind the Agreements based on
an alleged material breach by the Authority, the Developers have treated the
Agreements as still in effect by continuing to demand performance under the
Agreements and suing to enforce the Agreements.[3] 
See Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 708 (Tex. 1982)
(holding that, nonbreaching party must decide whether to rescind the contract
or seek to enforce it when the material breach occurred, rather than waiting
until after trial and before judgment to decide, and stating that nonbreaching
party waived its right to rescind the contract based on the other party=s material breach by (1) treating the
contract as still in effect following the material breach and (2) by filing
suit to enforce the contract); Gupta v. Eastern Idaho Tumor Inst., Inc.,
140 S.W.3d 747, 757B58 (Tex. App.CHouston [14th Dist.] 2004, pet. denied) (holding that, as a
matter of law, nonbreaching party was bound by the contract despite other party=s material breach because
nonbreaching party continued to demand performance under the contract following
the material breach).  In the Agreements, the Developers consent to the
Authority=s use of the Facilities free of charge until the
Authority purchases the Facilities, which has not occurred.

          For these
reasons, the trial court did not err in concluding that governmental immunity
bars the Developers= inverse-condemnation claims and in
granting the Authority=s plea to the jurisdiction.  Accordingly,
we overrule the Developers= two issues and affirm the trial court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment rendered and Memorandum
Opinion filed August 5, 2008.

Panel consists of Justices Fowler,
Frost, and Seymore.









[1]  See Tex.
Const. art. XVI, ' 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101,
1963 Tex. Gen. Laws 164, 173; Tex. Water
Code Ann. chs. 49, 51 (Vernon 2000 & Supp. 2007).





[2]  Often, courts use the terms Asovereign immunity@
and Agovernmental immunity@ interchangeably; nevertheless, they are two distinct concepts.  Wichita
Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  ASovereign immunity@
refers to a State=s immunity from suit and liability.  Id.  Its
protection extends not only to the State, but also to the varying divisions of
state government, including agencies, boards, hospitals, and universities.  AGovernmental immunity@ protects political subdivisions of the State, including counties,
cities, and school districts.  Id.





[3]  The Developers also cite two cases that are not on
point and that are not inconsistent with our analysis.  See City of Garden
Ridge v. Ray, No. 03-06-00197-CV, 2007 WL 486395, at *4 (Tex. App.CAustin Feb. 15, 2007, no pet.) (mem. op.); Texas
Parks & Wildlife Dep=t v.
Callaway, 971 S.W.2d 145, 150 (Tex.
App.CAustin 1998, no pet.).