**KIRBY LAKE DEVELOPMENT, LTD.,**
Miter Development Company, and
Taylor Lake, Ltd., Appellants,

v.

**CLEAR LAKE CITY WATER
AUTHORITY, Appellee.**

No. 14–06–00924–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 5, 2008.

Lawrence J. Fossi, Karen B. Jewell, for Appellants.

Barry Abrams, Ramon G. Viada III, for Appellee.

Panel consists of Justices FOWLER, FROST, and SEYMORE.

## MEMORANDUM OPINION

KEM THOMPSON FROST, Justice.

This is an appeal from the dismissal of inverse-condemnation claims filed by three developers against a water authority. We conclude that the facts alleged in the petition show an affirmative defense to the inverse-condemnation claims, namely that the developers consented to any alleged taking by the water authority. Accordingly, we affirm the trial court's dismissal for lack of subject-matter jurisdiction.

### I. Factual and Procedural Background

Appellants Kirby Lake Development, Ltd., Miter Development Co., and Taylor Lake, Ltd. (hereinafter collectively "Developers") are development companies that own property within the boundaries of appellee Clear Lake City Water Authority (hereinafter the "Authority"). The Authority is a conservation and reclamation district under article 16, section 59 of the Texas Constitution that operates as a water control and improvement district under Texas statutes.[1] The Authority and each of the Developers entered into respective agreements entitled "Sales Agreement and Lease of Facilities" (hereinafter collective-

ly the "Agreements"). The Developers sued the Authority in Harris County District Court in 2005, asserting, among other things, claims for alleged breaches of the Agreements by the Authority and inverse-condemnation claims. In a plea to the jurisdiction, the Authority asserted that the district court lacked subject-matter jurisdiction over the inverse-condemnation claims. The Developers then nonsuited those claims and filed them in the trial court below. The Authority asserted various defenses, including governmental immunity and consent. The Authority filed a plea to the jurisdiction, in which it asserted, among other things, that the Developers' pleadings show consent to the alleged taking. The trial court granted the Authority's plea to the jurisdiction and dismissed the claims for lack of subject-matter jurisdiction.

### II. Issues for Review

On appeal, the Authority presents the following issues:

(1) Where a governmental authority unequivocally repudiates its contractual obligation to pay for private property, and instead announces its intention to use such property in perpetuity without any compensation, does a valid inverse-condemnation claim arise?

(2) Did the trial court err in dismissing the Developers' inverse-condemnation claims for want of subject-matter jurisdiction?

### III. Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). When a party has filed a plea to the jurisdiction challeng-

1. *See* Tex. Const. art. XVI, § 59; Act of Apr. 18, 1963, 58th Leg., R.S., ch. 101, 1963 Tex. Gen. Laws 164, 173; Tex. Water Code Ann. chs. 49, 51 (Vernon 2000 & Supp. 2007).

ing the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.* If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

■ If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002).

## IV. ANALYSIS

**In their petition, did the Developers affirmatively negate jurisdiction by pleading facts which constitute consent to any alleged taking?**

■ The Authority asserts, and the Developers do not deny, that the Authority is a political subdivision of the State that is generally entitled to assert governmental immunity. *See Clear Lake City Water Author. v. Friendswood Dev. Co.,* 256 S.W.3d 735, 741–42 (Tex.App.-Houston [14th Dist.] 2008, pet. filed) (concluding the Authority is generally entitled to assert governmental immunity). When a political subdivision of the State is immune from suit under the doctrine of governmental immunity, a court lacks subject-matter jurisdiction.[2] *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Governmental immunity has two components: immunity from liability and immunity from suit. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex.2006). Immunity from suit bars suit against the entity altogether. *Id.* When a governmental entity enters into a contract, it waives immunity from liability and voluntarily binds itself, just as any other party would, to the terms of the contract, but that entity does not thereby waive immunity from suit. *Id.* For there to be a waiver of immunity from suit in this context, there must be a clear and unambiguous waiver of immunity from suit as to the claims in question. *See* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2007) (providing that a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language); *Tooke,* 197

2. Often, courts use the terms "sovereign immunity" and "governmental immunity" interchangeably; nevertheless, they are two distinct concepts. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). "Sovereign immunity" refers to a State's immunity from suit and liability. *Id.* Its protec-

tion extends not only to the State, but also to the varying divisions of state government, including agencies, boards, hospitals, and universities. "Governmental immunity" protects political subdivisions of the State, including counties, cities, and school districts. *Id.*

S.W.3d at 332–33 (requiring clear and unambiguous language to waive governmental immunity).

 There is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims within the ambit of article I, section 17 of the Texas Constitution (hereinafter "Takings Clause"). *See* TEX. CONST. art. I, § 17. Therefore, governmental immunity does not shield the Authority from a claim for compensation under the Takings Clause. *See* TEX. CONST. art. I, § 17; *State v. Holland,* 221 S.W.3d 639, 643 (Tex.2007). The Takings Clause mandates that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person. . . ." TEX. CONST. art. I, § 17. Generally, governmental entities compensate property owners before appropriating their property, either by paying a mutually agreed price or by paying the value as determined in a statutory condemnation proceeding. *See Westgate, Ltd. v. State,* 843 S.W.2d 448, 452 (Tex.1992). If, however, these entities appropriate property without paying adequate compensation, the property owner may recover the resulting damages through an inverse-condemnation claim. *See id.* An inverse condemnation may occur when a governmental entity physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *See id.* To properly assert an inverse-condemnation claim against a governmental entity, a party must plead the following elements: (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the party's property; (3) for public use. *See*

*Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex.2001); *Steele v. City of Houston,* 603 S.W.2d 786, 790–91 (Tex.1980); *see also State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941). Consent to any alleged taking is an affirmative defense. *See City of Houston v. Crabb,* 905 S.W.2d 669, 674–75 (Tex.App.-Houston [14th Dist.] 1995, no writ). The Authority pleaded this defense in the trial court below.

In their live petition in the trial court, the Developers pleaded as follows:

- The Authority entered into the Agreements with the Developers.
- Under these Agreements, the Developers agreed to construct, and the Authority agreed to purchase from the Developers, water, sewer, and drainage facilities that serviced homes built on the Developers' land (hereinafter the "Facilities").
- Under the Agreements, the Authority agreed to pay for the Facilities from proceeds of the sale of bonds. The Authority obligated itself to include "in any bond election" that it held "a bond authorization in an amount sufficient to pay the purchase price of the Facilities." The Authority also agreed to "include any purchase of the Facilities in any bond issue sold subsequent to such election."
- Pending the purchase of the Facilities, the Agreements allow the Authority to lease the Facilities at no charge, and to use them to provide water, wastewater, and drainage services to Authority residents. At all relevant times, based on such services, the Authority has levied and collected taxes and user fees from homeowners serviced by the Facilities.
- The Authority held a bond election in May 1998, and then again in October

1998. Each of those elections, if successful, would have authorized the issuance of bonds sufficient to permit the Authority to honor its obligation to purchase the Facilities under the Agreements. However, in the weeks leading up to those elections, members of the Authority's board of directors campaigned against the bond-authorization measures, and on each occasion the measures failed.

- The Developers sued the Authority and urged that, under the Agreements, the Authority still was obliged to purchase the Facilities out of other revenues available to the Authority, even absent the authorization of a bond issuance.

- Trial in that case resulted in a jury verdict in favor of the Developers, but this court reversed the trial court's judgment. *See Clear Lake Water Auth. v. Kirby Lake Dev., Ltd.,* 123 S.W.3d 735, 756 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). This court held that, though the Authority was obliged to include the bond authorization measure in its elections, it was not obliged to purchase the Facilities out of other Authority funds in the event that such an election were to fail.

- This court did not grant the Authority a perpetual license to abrogate its contractual obligations. It did not rule that, because the bond-authorization measures had failed in 1998, the Authority was therefore relieved from honoring its agreements to purchase the Facilities. In this court's view, by contract (1) the Developers had agreed to await payment until a successful bond election occurred, and (2) the Authority had agreed to include bond authorization measures in its elections until such time as bonds were authorized permitting purchase of the Facilities.

- The Authority scheduled another bond authorization election in September 2004. However, the Authority did not include any item authorizing the bonds that would have required to purchase the Facilities. Upon learning of this omission, the Developers lodged a protest with the Authority, pointing to the language of the Agreements and urging that a bond-authorization measure be added to the ballot.

- The Authority, however, determined to walk away from its contractual obligations, advising the Developers that it "already had satisfied" its obligation to seek voter approval to issue bonds for purchase of the Facilities. The Authority underscored its repudiation of its obligations under the Agreements in a written stipulation in another case in which it stated that it considered any obligation to include a bond-authorization measure to have been satisfied before September 2004.

- Although it has disclaimed any further obligation to seek voter approval of bonds to purchase the Facilities, the Authority continues to use the Facilities, with no payment to the Developers.

- As a result of this repudiation of the Authority's contractual obligation, the Developers filed suit in the district court asserting breach of contract and quantum meruit.

- The Authority's use of and exercise of dominion and control over the Facilities constitutes a taking of the Facilities without compensation in violation of the Takings Clause. The Authority's actions are intentional and those actions were a proximate cause of the

taking of the Facilities, which were owned by the Developers at the time of the taking. The Developers did not consent to the taking, and received no compensation for the taking, which was for a public use. The Developers seek damages for the property taken.

 In reviewing the Authority's challenge to the Developers' pleadings, we construe the pleadings liberally in their favor and look to their intent. *See Miranda*, 133 S.W.3d at 226. In their petition, the Developers allege that, under the Agreements, the Authority is allowed to lease and use the Facilities at no charge until the Authority purchases the Facilities and that the Authority has not purchased the Facilities. Presuming without deciding that the Authority's alleged breaches of the Agreements resulted in recoverable contract damages to the Developers, the facts alleged in the Developers' petition affirmatively negate the trial court's subject-matter jurisdiction by showing that the Developers agreed to allow the Authority to lease and use the Facilities free of charge until the Authority purchases the Facilities. *See General Servs. Comm'n*, 39 S.W.3d at 598–99 (holding that, even presuming that facts alleged in petition were true, plaintiff did not allege a claim within the scope of the Takings Clause because it did not plead sufficient intent); *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex.Civ.App.-Austin 1951, writ ref'd) (holding by Texas Supreme Court that takings claim failed as a matter of law because the State took possession of the property in question under a contract with the plaintiff and therefore with the plaintiff's permission and consent); *Hightower v. City of Tyler*, 134 S.W.2d 404, 407 (Tex.

Civ.App.-El Paso 1939, writ ref'd) (holding by Texas Supreme Court that takings claim failed because, as a matter of law, developers consented to the City of Tyler using the water and sewer facilities installed by developers). Under the applicable standard of review, the facts alleged in the Developers' petition affirmatively negate the trial court's subject-matter jurisdiction by showing that the Developers consented to any alleged taking by the Authority. *See Little–Tex Insulation Co.*, 39 S.W.3d at 598–99; *Steck Co.*, 236 S.W.2d at 869; *Hightower*, 134 S.W.2d at 407.

The Developers argue that the Authority has breached the Agreements by refusing to submit to the voters the bond-authorization measures that, if approved, would require the Authority to purchase the Facilities. The construction of the Agreements is the subject of another lawsuit; nonetheless, under the Authority's construction of the Agreements, there has been no breach of the Agreements and the Authority is not required to purchase the Facilities. Under the Developers' petition, the Agreements are still in effect. The petition shows that rather than rescind the Agreements based on an alleged material breach by the Authority, the Developers have treated the Agreements as still in effect by continuing to demand performance under the Agreements and suing to enforce the Agreements.[3] *See Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex.1982) (holding that, nonbreaching party must decide whether to rescind the contract or seek to enforce it when the material breach occurred, rather than waiting until after trial and before judgment to decide, and stating that nonbreaching party waived its right to rescind the contract based on the other party's

---

**3.** The Developers also cite two cases that are not on point and that are not inconsistent with our analysis. *See City of Garden Ridge v. Ray*, No. 03–06–00197–CV, 2007 WL 486395,

at \*4 (Tex.App.-Austin Feb. 15, 2007, no pet.) (mem. op.); *Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 150 (Tex.App.-Austin 1998, no pet.).

material breach by (1) treating the contract as still in effect following the material breach and (2) by filing suit to enforce the contract); *Gupta v. Eastern Idaho Tumor Inst., Inc.,* 140 S.W.3d 747, 757–58 (Tex. App.-Houston [14th Dist.] 2004, pet. denied) (holding that, as a matter of law, nonbreaching party was bound by the contract despite other party's material breach because nonbreaching party continued to demand performance under the contract following the material breach). In the Agreements, the Developers consent to the Authority's use of the Facilities free of charge until the Authority purchases the Facilities, which has not occurred.

For these reasons, the trial court did not err in concluding that governmental immunity bars the Developers' inverse-condemnation claims and in granting the Authority's plea to the jurisdiction. Accordingly, we overrule the Developers' two issues and affirm the trial court's judgment.