**Reversed and Rendered and Majority and Dissenting Opinions filed August 9, 2012.**



In The

# Fourteenth Court of Appeals

### NOS. 14-10-00944-CV and
### 14-11-00417-CV

### THE CITY OF HOUSTON, TEXAS, Appellant

### V.

### TRAIL ENTERPRISES, INC. D/B/A WILSON OIL COMPANY, THOMAS G. ROGERS, CATHERINE BAUMANN, CAROLINE WHIPPLE, MRS. S. KELLEY BRUCE, JOHN HOBBS KELLEY, MARY VIRGINIA KELLEY INGRAM, DAYSTAR OIL AND GAS CORPORATION, JOHN ALEXANDER, REBECCA BRUCE JONES, ELEANOR BRUCE MCREYNOLDS, ROBERT D. BRUCE, AND INTERVENOR, MARY BRUCE, Appellees

**On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 799234**

## D I S S E N T I N G   O P I N I O N

Under article I, section 17 of the Texas Constitution, a property owner is entitled to adequate compensation when a governmental entity intentionally performs an act in the exercise of its lawful authority that results in the taking, damaging, or destruction of the owner's property for public use. This means that an owner may recover even if the owner's property was not taken but only damaged. In this inverse-condemnation case, a

group of mineral interest owners ("Mineral Interest Owners") obtained a judgment in the trial court against The City of Houston based upon claims in which they alleged both a taking theory of recovery and a damage theory of recovery. Their inverse-condemnation claims arose out of the enactment of City of Houston Ordinance 97-1394 ("Ordinance"), which effectively prohibits the drilling of new wells in specified areas near Lake Houston. In its second appellate issue, the City asserts the trial court erred in concluding that the enactment of the Ordinance resulted in a regulatory taking of the Mineral Interest Owners' property. Presuming for the sake of argument that no taking resulted from the enactment of the Ordinance, it is possible that this court nonetheless could affirm the trial court's judgment under the damage theory of recovery. Thus, by establishing only that there was no regulatory taking, the City does not show it is entitled to a reversal.

ARTICLE I, SECTION 17 OF THE TEXAS CONSTITUTION

In interpreting the Texas Constitution, courts are to rely heavily on the literal text and must give effect to its plain language. *Republican Party of Texas v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997). Under the applicable version of the Texas Constitution, the people of Texas state in pertinent part:

PREAMBLE

> Humbly invoking the blessings of Almighty God, the people of the State of Texas, do ordain and establish this Constitution.

ARTICLE I
BILL OF RIGHTS

> That the general, great and essential principles of liberty and free government may be recognized and established, we declare:
>  . . .
> § 17. No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money. . .

Tex. Const. Preamble, art. I, § 17 (amended 2009).[1] This provision contains some of the

---

[1] In November 2009, the people of Texas amended this section of the Texas Constitution, but that amended version of the Constitution does not apply to the Mineral Interest Owners' claims based upon

same language yet is different in key respects from the Takings Clause of the Fifth Amendment to the United States Constitution, which provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. At one time, the two provisions were much more alike.

The Constitution of the Republic of Texas and every constitution of the State of Texas prior to the Constitution of 1876 contained a takings provision that was substantially similar to the Takings Clause in the Fifth Amendment. *See* TEX. CONST. of 1869, art. I, § 14; TEX. CONST. of 1866, art. I, § 14; TEX. CONST. of 1861, art. I, § 14; TEX. CONST. of 1845, art. I, § 14; REPUB. TEX. CONST. of 1836, Declaration of Rights, Thirteenth, *reprinted in* TEX. CONST. app. 482, 494 (West 1993); *Gulf, Colorado & Santa Fe Ry. Co. v. Fuller*, 63 Tex. 467, 467–69, 1885 WL 7070, at *2 (Tex. 1885). But, 136 years ago, the people of Texas expanded the scope of the state counterpart to the federal Takings Clause. In the Constitution of 1876, the people of Texas carried forward the prior takings provision in the Texas Bill of Rights but added the words "damaged or destroyed" after the word "taken." *See* TEX. CONST. of 1876, art. I, § 17; *Steele v. City of Houston*, 603 S.W.2d 786, 789–90 (Tex. 1980). The "taken, damaged or destroyed" language has been in this provision of the Texas Constitution since 1876.

Not long after the ratification of the Texas Constitution of 1876, the Supreme Court of Texas held that, under the plain meaning of article I, section 17, property owners may recover under an inverse-condemnation claim if their property was damaged, even though the property was not taken. *See Gainesville, H. & W.R. Co. v. Hall*, 14 S.W. 259, 259–60 (Tex. 1890); *Fuller*, 63 Tex. 467 at 469–73, 1885 WL 7070, at *2–3. The Supreme Court of Texas has reaffirmed this holding over the years, and to this day our high court has not overruled it. *See State v. Biggar*, 873 S.W.2d 11, 13–14 (Tex. 1994); *Steele*, 603 S.W.2d at 790; *DuPuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965). Though the Supreme Court of Texas has held that an inverse-condemnation claim under the Texas Constitution may be based upon the taking, damaging, or destruction of

the enactment of the Ordinance in 1997. *See* Tex. Const. art. I, § 17 (West 2012).

property, to date, in analyzing whether a taking has occurred, the high court has been guided by federal takings jurisprudence. *See Edwards Aquifer Auth. v. Day*, — S.W.3d—,— No. 08-0964, 2012 WL 592729, at *15 (Tex. Feb. 24, 2012); *Sheffield Development Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004). Of course, in analyzing inverse-condemnation claims under the Texas Constitution based on a damage theory, the Supreme Court of Texas has not followed federal jurisprudence because there is no analogous "damage" language in the Fifth Amendment. *See Biggar*, 873 S.W.2d at 13–14.

## THE INVERSE CONDEMNATION CLAIMS

The elements of an inverse-condemnation claim against a governmental entity under article I, section 17 of the Texas Constitution are (1) the governmental entity intentionally performed an act in the exercise of its lawful authority; (2) that resulted in the taking, damaging, or destruction of the claimant's property; (3) for public use. *See Steele*, 603 S.W.2d at 790–91; *Kirby Lake Development, Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 320 S.W.3d 829, 843–44 (Tex. 2010). Thus, the terms "inverse condemnation" and "inverse-condemnation claim" include both an alleged taking of property and an alleged damaging of property. *See Steele*, 603 S.W.2d at 790–91; *Kirby Lake Development, Ltd.*, 321 S.W.3d at 5.

In their live petition, the Mineral Interest Owners describe their suit as an "action to recover reasonable and adequate compensation for the taking and/or damaging by [the City] of the mineral estate owned by [the Mineral Interest Owners]." The Mineral Interest Owners allege that "[t]he damage and/or taking of [the Mineral Interest Owners'] mineral estate has been caused by the conduct of the [City] as described in Paragraph IV below." After alleging various facts in their petition, the Mineral Interest Owners assert that "[a]s a result of the above and foregoing, Plaintiffs assert a cause of action for inverse condemnation against the [City]" and "[a]s set out in Paragraph IV above, the [City] has taken and/or damaged Plaintiffs' properties for public use without adequate

4

compensation having been made . . . in violation of Article I, Section 17 of the Constitution of the State of Texas." In their petition, each time the Mineral Interest Owners allege a taking, they also allege a damaging of their property. In their live petition, the Mineral Interest Owners assert inverse-condemnation claims based upon an alleged taking or alleged damaging of their property allegedly resulting from the City's enactment of the Ordinance.

The trial court bifurcated the trial in this case. First, the trial court conducted "a bench trial on the liability issue of whether an inverse condemnation had occurred." The term "inverse condemnation" includes the Mineral Interest Owners' damage theory of recovery. *See Steele*, 603 S.W.2d at 790–91; *Kirby Lake Development, Ltd.*, 321 S.W.3d at 5. Included in the materials the Mineral Interest Owners submitted to the trial court for consideration during this bench trial was a proposed order reflecting the relief they were seeking. In this proposed order, the trial court would find that the Ordinance "resulted in a taking or damaging of [the Mineral Interest Owners'] mineral interests and constitutes [an] inverse condemnation of [the Mineral Interest Owners'] property." Following the bench trial, the trial court ruled in the Mineral Interest Owners' favor, finding that "enactment of [the Ordinance] by the [City] resulted in an inverse condemnation of [the Mineral Interest Owners'] property interest under Article I, § 17 of the Constitution of the State of Texas."

According to the trial court's findings of fact, a jury was then empanelled, and "the case on the issue of the difference in the market value of the property in question resulting from the inverse condemnation proceeded to trial." In response to a single question the jury made a finding as to "the difference in the market value of the mineral estate in question immediately before and immediately after the inverse condemnation on November 5, 1997." Thus, the damages finding was based upon an "inverse condemnation" rather than a "taking." The jury charge contained an instruction in which the trial court stated that the enactment of the Ordinance resulted in a taking of the Mineral Interest Owners' property interest. But this instruction did not affect how the

5

jury made its finding regarding damages. According to the sole jury question, the trial court determined that adequate compensation for the Mineral Interest Owners was the decline in the market value of their mineral interests resulting from the enactment of the Ordinance, whether the compensation was based upon a taking theory or a damage theory. Both in its judgment and in its findings of fact and conclusions of law, the trial court found that the City's enactment of the Ordinance resulted in an inverse condemnation of the Mineral Interest Owners' property under article I, section 17 of the Texas Constitution. Based upon this inverse condemnation, the trial court found that the Mineral Interest Owners were entitled to recover from the City the difference in the market value of their mineral interests immediately before and immediately after the inverse condemnation on November 5, 1997.

In their appellees' brief, the Mineral Interest Owners do not assert that the damage theory is an independent basis for the trial court's judgment. But, neither do the Mineral Interest Owners state that their damage theory is not a basis for the judgment. In any event, even if the Mineral Interest Owners unambiguously conceded in their appellees' brief that the trial court did not base its judgment on the damage theory, this concession would not be binding on this court, and we still would have to confirm that this concession is correct based upon the record. *See Colorado Republican Federal Campaign Comm. v. FEC*, 518 U.S. 604, 622, 116 S. Ct. 2309, 2319, 135 L. Ed.2d 795 (1996) (holding that Supreme Court of the United States was not bound by a party's concession regarding the proper legal characterization of the facts in a civil appeal); *Saldano v. State*, 70 S.W.3d 873, 884–91 (Tex. Crim. App. 2002) (affirming trial court's judgment despite appellee's confession of error based upon appellate court's independent determination that judgment did not contain reversible error); *Wright v. Moore*, 760 S.W.2d 242, 243–44 (Tex. 1988) (conducting independent analysis of will and concluding that will language was ambiguous despite parties' agreement that will language was unambiguous); *Haas v. Voight*, 940 S.W.2d 198, 201 & n.1 (Tex. App.— San Antonio 1996, writ denied) (holding that, despite appellee's concession to the

6

contrary in a civil appeal, appellant's first appellate issue lacked merit). An appellee's concession of an issue involved in the appeal does not relieve this court of the obligation to perform its judicial function by independently determining whether the appellee's concession is based on sound analysis. *See Saldano*, 70 S.W.3d at 884; *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 398, n.2 (Tex. App.—Dallas 2000, pet. denied) (holding that appellee's concession regarding question necessary to the proper disposition of the appeal did not obviate need for appellate court to conduct independent analysis); *Jackson Hotel Corp. v. Wichita Cnty. Appraisal Dist.*, 980 S.W.2d 879, 881 n.3 (Tex. App.—Fort Worth 1998, no pet.) (same as *Cameron*); *Haas v. Voight*, 940 S.W.2d 198, 201 & n.1 (same as *Cameron*).

In sum, the Mineral Interest Owners sought compensation under article I, section 17 of the Texas Constitution based upon both a taking theory of recovery and a damage theory of recovery, and the fact findings and judgment are based upon a determination that the Ordinance resulted in an inverse condemnation, which encompasses both a taking and a damaging of the Mineral Interest Owners' property. On this record, the trial court based its judgment upon both the taking theory of recovery and the damage theory of recovery. In its second issue, the City asserts that the trial court erred in concluding that the enactment of the Ordinance constituted a regulatory taking of the Mineral Interest Owners' property. Even if we presume that the taking theory of recovery lacks merit, as the City asserts under the second issue, the damage theory of recovery is an independent basis for the trial court's judgment that is not challenged in the second issue. *See Biggar*, 873 S.W.2d at 13–14; *Steele*, 603 S.W.2d at 790; *DuPuy*, 396 S.W.2d at 108; *Hall*, 14 S.W. at 259–60; *Fuller*, 63 Tex. 467 at 469–73, 1885 WL 7070, at \*2–3; *Kirby Lake Development, Ltd.*, 321 S.W.3d at 5. Therefore, sustaining the second issue does not provide a basis for reversing the trial court's judgment. Rather than reversing and rendering a take-nothing judgment based upon the sustaining of the second issue alone, this court instead should address the City's first and third issues and, if necessary, the Mineral Interest Owners' cross-issue. Because this court does not do so, I respectfully

7

dissent.



/s/  Kem Thompson Frost
   Justice


Panel consists of Justices Frost, Seymore, and Jamison (Jamison, J., majority).