

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

―――――――――――――――

No. 02-25-00525-CV

―――――――――――――――

IN RE S.N., Relator

―――――――――――――――

Original Proceeding
324th District Court of Tarrant County, Texas
Trial Court No. 324-656801-19

―――――――――――――――

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Relator S.N (Mother) filed this petition for writ of mandamus to compel the trial court to grant her motion to dismiss Nonparent's suit for access to Mother's son, Andrew, as required under Section 102.0031 of the Texas Family Code, a statute that became effective while Nonparent's suit against Mother was pending in the trial court.[1] *See* Tex. Fam. Code Ann. § 102.0031. We agree that the trial court abused its discretion by denying Mother's motion to dismiss and conditionally grant her petition for writ of mandamus.

## I. BACKGROUND

This is Mother's third petition for writ of mandamus in this matter. *See In re S.N.*, No. 02-24-00422-CV, 2024 WL 4275629 (Tex. App.—Fort Worth Sep. 24, 2024, orig. proceeding) (per curiam) (mem. op.); *In re S.N.*, No. 02-24-00017-CV, 2024 WL 566540 (Tex. App.—Fort Worth Feb. 13, 2024, orig. proceeding) (mem. op.). Our first opinion set out the facts that led to the litigation.

Mother and Nonparent were in a relationship during which each adopted children and each gave the other conservatorship rights to certain children that the other adopted. Nonparent adopted her biological niece and gave Mother conservatorship rights to that niece, and Mother adopted two children and gave

---

[1]To protect the child's identity, we use an alias when referring to him and refer to the parties by their relationship to him. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Nonparent conservatorship rights to them. *See S.N.*, 2024 WL 566540, at *1. Andrew did not follow this pattern.

Andrew was born in 2016 and was placed in Mother and Nonparent's home. *See id.* He was a sibling of the two children whom Mother had adopted and to whom Mother had given Nonparent conservatorship rights. *See id.* But in May 2017, Mother and Nonparent's relationship ended. *See id.* After the breakup, Mother and Nonparent agreed to a possession schedule—formalized by a court order—for the three other children. *See id.* Andrew followed the same schedule. *See id.* In December 2017, Mother adopted Andrew. *See id.*

Thereafter, in 2019, Nonparent sued to become Andrew's sole managing conservator. *See id.* Nonparent asserted standing as "a person, other than a foster parent, relative, or designated caregiver of a child placed by the Department of Family and Protective Services, who has had exclusive care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the of the filing of the petition." *See* Tex. Fam. Code Ann. § 102.003(a)(9). She also alleged that the time was not "continuous and uninterrupted." *See id.* § 102.003(b).

Despite the suit, Mother and Nonparent followed Andrew's possession schedule until 2021, when Mother terminated it. *See S.N.*, 2024 WL 566540, at *1. At that point, Nonparent's possession and access to Andrew became an issue. The litigation between Mother and Nonparent over Andrew persists to this day.

3

Meanwhile, in 2025, the Texas Legislature enacted a statute that addressed nonparent standing in suits affecting the parent–child relationship—Section 102.0031 of the Texas Family Code. Tex. Fam. Code Ann. § 102.0031. Under this statute, nonparents are required to serve with their initial petition an affidavit showing that denying the relief sought would significantly impair the child's physical health or emotional development. *Id.* This statute became effective September 1, 2025, and it applied to all cases pending in a trial court on or after the effective date. Act of May 15, 2025, 89th Leg., R.S., ch.236, §§ 1, 4, 5, sec. 102.0031, 2025 Tex. Sess. Law Serv. ____, ____ (to be codified at Tex. Fam. Code § 102.031). Because Nonparent's suit against Mother remained pending in the trial court, Section 102.0031 applied to her suit against Mother.

Attempting to comply with Section 102.0031, Nonparent filed a second amended petition on September 5, 2025, and attached a supporting affidavit. Five days later, based on Section 102.0031, Mother filed a motion to dismiss Nonparent's suit and attacked the sufficiency of Nonparent's supporting affidavit. After a non-evidentiary hearing, the trial court denied Mother's motion to dismiss on September 19, 2025, and Mother filed shortly thereafter—on October 6, 2025—this petition for writ of mandamus. On the same date, we stayed the trial court proceedings and asked Nonparent to respond. After two extensions, Nonparent filed her response on November 19, 2025.

4

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

We grant mandamus relief only when the trial court has clearly abused its discretion and the relator lacks an adequate remedy.  *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding); *see In re State*, 355 S.W.3d 611, 613 (Tex. 2011) (orig. proceeding).  When determining what the law is or applying the law to the particular facts, a trial court has no discretion.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).

### B.  STANDING

Mandamus is permissible when a trial court erroneously denies a motion to dismiss a suit affecting the parent–child relationship (SAPCR) for lack of standing.  *In re A.G.*, No. 02-24-00548-CV, 2025 WL 294159, at *2 (Tex. App.—Fort Worth Jan. 24, 2025, orig. proceeding) (mem. op.); *In re Clay*, No. 02-18-00404-CV, 2019 WL 545722, at *3 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding [mand. denied]) (mem. op.); *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding).  Thus, we must determine whether the trial court clearly misapplied the law regarding standing when denying Mother's motion to dismiss.  *Clay*, 2019 WL 545722 at *3.

Standing is a question of law that we review de novo.  *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).  A party's lack of standing deprives the trial court of subject-matter jurisdiction and, thus, renders any court action void.  *In re Russell*, 321 S.W.3d

5

846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). If a petitioner lacks standing, the trial court must dismiss its claim for lack of jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 153 (Tex. 2012); *In re H.L.*, 613 S.W.3d 722, 724 (Tex. App.—Fort Worth 2020, no pet.).

When standing has been conferred by statute, the statute itself provides the proper framework for a standing analysis. *See Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984) ("Standing consists of some interest peculiar to the person individually and not as a member of the general public. . . . This general rule of standing is applied in all cases absent a statutory exception to the contrary."). A party seeking relief in a SAPCR must allege and establish standing within the parameters of the relevant Family Code provisions. *H.L.*, 613 S.W.3d at 724.

## C. STANDING UNDER SECTION 102.0031

Section 102.0031 sets out what a nonparent must show to have standing in a suit affecting the parent–child relationship:

> (a) A nonparent who files or intervenes in a suit affecting the parent–child relationship in which another party to the suit is a parent of the child shall execute and serve with the nonparent's initial pleading an affidavit that:
>
> > (1) attests, based on the nonparent's personal knowledge or representations made to the nonparent by a person with personal knowledge of the matter, that denying the relief sought would significantly impair the child's physical health or emotional development; and
> >
> > (2) contains facts that support the allegation under Subdivision (1).

6

(b) The court shall deny the relief sought and dismiss the suit or strike the intervention, as applicable, unless the court determines, based on the affidavit, that the affidavit contains facts adequate to support the allegation under Subsection (a)(1).

Tex. Fam. Code Ann. § 102.0031.[2]

Although Section 102.0031 became effective on September 1, 2025, the statute's dispositive language—"that denying [the nonparent] the relief sought would significantly impair the child's physical health or emotional development"—is nearly identical to language that has been used in the context of grandparent-access statutes since 2005. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 1113, § 11, 2009 Tex. Gen. Laws 3056, 3060 (codified at Tex. Fam. Code § 153.432) ("that denial of possession of or access to the child by the [grandparent] would significantly impair the child's physical health or emotional well-being"); Act of May 27, 2005, 79th Leg., R.S., ch. 484, § 4, sec. 153.433, 2005 Tex. Gen. Laws 1345, 1345 (amended 2009) (current version at Tex. Fam. Code § 153.432) ("that denial of possession of or access to the child [by the grandparent] would significantly impair the child's physical health or emotional well-being"). When the legislature has used a word or phrase in a statute in one sense and with one meaning and later uses the same word or phrase in legislation on the same subject matter, its meaning in the latter statute will ordinarily be the same.

---

[2]Section 102.0031 effectively adds an additional requirement to Section 102.003(a)(9). *See id.* §§ 102.003(a)(9), 102.0031.

7

*Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020). This rule holds special force where their meaning in the earlier act is clear or has been adjudicated. *Id.*

## III. DISCUSSION

### A. ABUSE OF DISCRETION

### 1. Affidavit Insufficient

The first two pages of Nonparent's affidavit set out how much she loved Andrew, how bonded they were, and how shattered she was when Mother indicated that Andrew would no longer be coming to her home. She described how happy both she and Andrew were when visits resumed in November 2023:

> Each morning, I drove him to school, using that time to talk about his favorite color, his favorite foods, even about Michael Jackson. I watched his face light up when I attended his school events. I will never forget the pride in his eyes when he introduced me to his teachers and friends, as if to say: ["]This is my mom.["] His teachers even told me they noticed a change in him—that he seemed happier, more engaged, and better adjusted when I was present in his life. These moments were not small. They were proof of what I already knew: [Andrew] needs me, just as I need him. Our time together restored joy, stability, and wholeness to him.

She then expressed how difficult it was when visits ended in February 2024. Nonparent continued,

> What devastates me most is hearing that [Andrew] blames himself for the separation. No child should carry such a burden. This is not the failure of a child; it is the deliberate cruelty of an adult who has used her authority not to nurture, but to sever. By isolating [Andrew] from [Nonparent], siblings, and extended family, [Mother] has inflicted lasting emotional trauma that has already impaired him significantly and will continue to do so without intervention.

8

I have done everything within my power to hold onto my son and assure him of my love. Yet [Mother's] actions speak loudly: she has worked tirelessly to erase me from [Andrew's] life, to the detriment of his emotional, psychological, and physical wellbeing. In doing so, she has shown that she cannot and does not put [Andrew's] needs before her own resentment.

[      ]I respectfully submit that [Mother] is unfit to act as [Andrew's] primary parent, and that continuing under her care places [Andrew] at risk of lasting impairment. [Andrew] deserves stability, love, and the presence of the parent who has always been devoted to him.

In the context of grandparent access and Section 153.432, courts have repeatedly held that such conclusory statements are insufficient to show significant impairment. *See A.G.*, 2025 WL 294159, at *5–7 (citing *In re Scheller*, 325 S.W.3d 640, 643–44 (Tex. 2010) (orig. proceeding); *In re Derzapf*, 219 S.W.3d 327, 333–34 (Tex. 2007) (orig. proceeding); *H.L.*, 613 S.W.3d at 726–27; *In re Turan*, No. 13-19-00124-CV, 2019 WL 4871484, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 2, 2019, orig. proceeding) (mem. op. on reh'g); *In re J.M.G.*, 553 S.W.3d 137, 143 (Tex. App.—El Paso 2018, orig. proceeding)); *see also In re Sullender*, No. 12-12-00058-CV, 2012 WL 2832542, at *2–3 (Tex. App.—Tyler June 11, 2012, orig. proceeding) (mem. op.); *In re A.N.G.*, 02-09-00006-CV, 2010 WL 213975, at *2–4 (Tex. App.—Fort Worth Jan. 21, 2010, no pet.) (mem. op.); *In re J.P.C.*, 261 S.W.3d 334, 337–40 (Tex. App.—Fort Worth 2008, no pet.). Section 102.0031 uses language nearly identical to Section 153.432's, with the only difference being that Section 102.0031 refers to "the child's physical health or emotional development," while Section 153.432 refers to "the child's physical health or emotional well-being." *See* Tex. Fam. Code Ann.

9

§§ 102.0031, 153.432. We conclude that Nonparent's affidavit, which contains conclusory statements that would be deemed insufficient under Section 153.432, are similarly conclusory and insufficient under Section 102.0031. *See Bush*, 601 S.W.3d at 647.

### 2. Our First Mandamus Opinion and a Previous Trial Court Hearing

Nonparent argues, however, that we should consider more than her affidavit. She points to our first opinion in which we acknowledged that an earlier judge in this case stated in a 2023 email that denying Nonparent access and possession would substantially impair Andrew's emotional development. *See S.N.*, 2024 WL 566540, at *1. For several reasons, as demonstrated below, Nonparent's reliance on our first opinion is misplaced.

We granted Mother mandamus relief in the first opinion because the trial court failed to address whether she was a "fit parent"; we expressly did not reach whether the email regarding significant impairment would make a difference. *Id.* at *5. But in footnote 6 of our opinion, we rejected the idea that the testimony on which Nonparent relied would have supported the earlier judge's significant-impairment finding in the email. *Id.* at *5 n.6. Consequently, our earlier opinion did not address the significant-impairment finding, and to the extent our earlier opinion addressed it in a footnote, we rejected it.

Unlike the present case, the mandamus record in the proceeding giving rise to our first opinion included testimony. *Id.* at *3–5. To the extent that Nonparent relies

on the testimony presented at the previous hearing, her reliance is improper. The testimony from the earlier hearing (a 2023 hearing) was not introduced into evidence during the 2025 hearing and thus was not part of the record that the current judge considered when ruling on Mother's motion to dismiss. *See Brann v. Guimaraes*, No. 14-20-00023-CV, 2021 WL 4099651, at *3 (Tex. App.—Houston [14th Dist.] Sept. 9, 2021, no pet.) (mem. op.).

Regarding the earlier judge's email, although it is not part of the current mandamus record, we may nevertheless consider it because it was included in the earlier mandamus record. *See In re C.B.*, No. 02-25-00026-CV, 2025 WL 728233, at *2 n.6 (Tex. App.—Fort Worth Mar. 6, 2025, orig. proceeding [mand. denied]) (mem. op.). That record shows that the earlier judge's email bears a file mark. Nothing, however, shows that the current judge was aware of the earlier judge's email. Nonparent did not mention it in her response to Mother's motion to dismiss.

To the extent Nonparent relies on the email, her argument is that collateral estoppel precludes a contrary finding or, put differently, that the issue has been decided and cannot be revisited. She similarly argues that collateral estoppel applies to a third judge's 2022 order providing that she had standing under Section 102.003(a)(9) of the Texas Family Code and, thus, that 2022 order precludes any further inquiry. We disagree.

The legislation enacting Section 102.0031 specifically provides that it applied to all cases pending in a trial court on or after the September 1, 2025 effective date.

Act of May 15, 2025, 89th Leg., R.S., ch.236, § 4, sec. 102.0031, 2025 Tex. Sess. Law Serv. ____, ____ (to be codified at Tex. Fam. Code § 102.0031). Nonparent's case falls within that category; she thus has to comply with Section 102.0031 to maintain standing.

A party may lose standing while a case is pending. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *Empower Texans, Inc. v. Tex. Ethics Comm'n*, No. 03-16-00872-CV, 2018 WL 3678005, at *4 (Tex. App.—Austin Aug. 3, 2018, no pet.) (mem. op.). Thus, establishing standing initially does not guarantee standing throughout a case. Nonparent's argument that standing, once established, cannot be lost fails.

So long as the trial court retains plenary jurisdiction, it can revisit an issue. *J. Allen Fam. Partners, Ltd. v. Swain*, No. 04-09-00384-CV, 2010 WL 2103228, at *2 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.). Since the trial court here has not rendered a final judgment, it retains plenary jurisdiction over the case.

And as for collateral estoppel, it is inapplicable within the context of a single proceeding; it requires two separate actions. *See Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Because Nonparent's suit is a single proceeding, she cannot rely on collateral estoppel.

We conclude that nothing in our earlier opinion or the earlier trial court proceedings helps Nonparent.

### 3. Nonparent's Reliance on *C.J.C.*

Nonparent next maintains that the supreme court's *C.J.C.* majority and concurring opinions dictate that she has standing. *In re C.J.C.*, 603 S.W.3d 804 (Tex. 2020) (orig. proceeding).[3] We disagree. *C.J.C.* does not support her position. Standing was not the issue in either the majority or the concurring opinion in *C.J.C.*

In *C.J.C.*, the father and mother had a child whom the opinion referred to as Abigail. *Id.* at 808. In 2016, the father and the mother stopped living together, and Father filed a suit to determine conservatorship, possession, and child support; that suit ended with the trial court appointing the father and mother as Abigail's joint managing conservators. *Id.*

In September 2017, the mother and Abigail moved in with the mother's boyfriend, Jason. *Id.* About a year later, in July 2018, the mother died, and the maternal grandparents sued to become joint managing conservators with Jason and to have court-ordered visitation; Jason sued as well—seeking similar relief. *Id.* at 808–09. The father moved to strike both the maternal grandparents' and Jason's petitions for lack of standing. When the trial court denied his motion, he filed a petition for writ of mandamus. *Id.* at 809.

The court of appeals granted the father mandamus relief as to the maternal grandparents because no evidence showed that the father's conservatorship would significantly impair Abigail's physical health or emotional development. *Id.* n.16; *see*

---

[3] In his email, the earlier judge also relied on the concurring opinion in *C.J.C.*

13

Tex. Fam. Code. Ann. § 102.004(a)(1).  This effectively ended the maternal grandparents' litigation.

But the court denied mandamus relief as to Jason because he was not a grandparent and fell under a different statute for purposes of determining standing—Section 102.003(a)(9), which grants standing to persons who have exercised actual care, control, and possession of a child for at least six months preceding the filing of the petition.  *C.J.C.*, 603 S.W.3d at 809 n.17; *see* Tex. Fam. Code Ann.§ 102.003(a)(9).[4] From that point forward, Jason's standing was never questioned.

Once back in the trial court, it entered—over the father's objections—a temporary order naming Jason as a possessory conservator and giving him visitation rights.  *C.J.C.*, 603 S.W.3d at 810.  The father sought but was denied mandamus relief in the court of appeals.  *Id.*  He then sought and obtained mandamus relief in the Texas Supreme Court.  *Id.* at 820.

The question that the majority and concurring opinions in *C.J.C.* addressed was what Jason needed to show before the trial court could properly appoint him as a possessory conservator with visitation rights.  Despite the absence of supporting language in the applicable statute, *id.* at 813, the majority concluded that the father was entitled to a presumption that he was a fit parent and was acting in Abigail's best interest and that Jason had presented no evidence to rebut either presumption, *id.*

---

[4]Nonparent initially obtained standing under the same statute.  When the supreme court decided *C.J.C.*, however, Section 102.0031 had not yet been enacted.

at 819–20. It thus conditionally granted the father's petition for writ of mandamus and instructed the trial court to vacate its temporary orders granting Jason conservatorship and possessory rights. *Id.* at 820.

The question before us is not whether Nonparent should win on the merits; rather, the question before us is whether she has standing to even bring this suit. Nonparent's reliance on *C.J.C.* is misplaced.

### 4. Legislative History

Nonparent maintains that the legislative history of Section 102.0031 shows that the Legislature intended it to be a codification of Judge Lehrmann's concurrence in *C.J.C. See* S. Research Center Jurisprudence, Bill Analysis, Tex. S.B. 2052, 89th Leg., R.S., (as filed 6/12/25).[5] We disagree. Nonparent's reliance on the legislative history is mistaken in two respects.

First, the analysis shows that it was intended to codify the *C.J.C.* majority opinion, not Judge Lehrmann's concurrence, *id.*, but as noted earlier, the issue in *C.J.C.* was not standing, so whether the reference was to the majority or concurring opinion makes no difference.

Second, the reference to *C.J.C.* was not in conjunction with Section 102.0031. The analysis on which Nonparent relies encompassed three amendments to the Texas Family Code—Sections 102.0031, 153.002, and 156.008—not just Section 102.0031.

---

[5]The legislative history on which Nonparent relies is too lengthy to place here. We have, however, placed it in an endnote.

15

*Id.* Contextually, the section to which the analysis was referring was Section 153.002—"Best Interest of Child; Rebuttable Presumption in Suit Between Parent and Nonparent"—which was the issue that both the majority and the concurrence addressed in *C.J.C. Id.*

Nonparent's reliance on the legislative history does not help her.

### 5. Holding

Accordingly, we hold that Nonparent's conclusory affidavit was insufficient and that the trial court thus abused its discretion by denying Mother's motion to dismiss. *See A.G.*, 2025 WL 294159, at *5–7.

### B. INADEQUATE REMEDY AT LAW

Requiring Mother to submit to a trial and, if necessary, pursue an appeal to correct this jurisdictional error would waste time, money, and resources; unnecessarily prolong custody and possession issues regarding Andrew; and frustrate the purpose of Section 102.0031. Accordingly, we hold that Mother has an inadequate remedy at law. *See A.G.*, 2025 WL 294159, at *2; *In re McAllen Hosps., L.P.*, No. 13-20-00210-CV, 2020 WL 2611272, at *7–8 (Tex. App.—Corpus Christi–Edinburg May 22, 2020, orig. proceeding) (mem. op.).

### IV. CONCLUSION

We vacate our October 6, 2025 order staying the trial court proceedings. Because Nonparent's lack of standing left the trial court without subject-matter jurisdiction over her claims for conservatorship and for possession and access, the

16

trial court clearly abused its discretion by refusing to dismiss those claims. Therefore, we conditionally grant Mother's petition for writ of mandamus and instruct the trial court to vacate its order denying Mother's motion to dismiss, to grant her motion, and to dismiss Nonparent's claims for lack of standing. Only if the trial court fails to comply with our instructions will we issue the writ.[i]

/s/Brian Walker

Brian Walker
Justice

Delivered: December 22, 2025

---

[i]The legislative history on which Nonparent relies provides,

AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

An issue of parental rights has been highlighted in Supreme Court of Texas case *In Re C.J.C.*, Relator. Traditionally, parents are presumed to be fit in making decisions in the best interest of their child. However, this is not stated in statute for modification proceedings when transferring custody of the parent's child to a third party. The Texas Supreme Court Justices in *In Re C.J.C.*, Relator ruled that parents have the "fundamental right to make decisions concerning the care, custody, and control" of that child. Current statute does not conflict with this ruling, however it is not directly stated in statute either.

S.B. 2052 codifies a Supreme Court of Texas ruling, and clarifies that suits by nonparents requesting conservatorship, possession, or access to the child must overcome the presumption that a parent acts in the best interest of the parent's child and it is in the best interest of a child to be in the care, custody, and control of a parent.

(Original Author's/Sponsor's Statement of Intent)

17

S.B. 2052 amends current law relating to suits affecting the parent–child relationship between a parent and a nonparent.

RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

SECTION BY SECTION ANALYSIS

SECTION 1. Amends Chapter 102, Family Code, by adding Section 102.0031, as follows:

Sec. 102.0031. REQUIRED AFFIDAVIT FOR STANDING OF NONPARENT. (a) Requires a nonparent who files or intervenes in a suit affecting the parent–child relationship in which another party to the suit is a parent of the child to execute and serve with the nonparent's initial pleading an affidavit that:

(1) attests, based on the nonparent's personal knowledge or representations made to the nonparent by a person with personal knowledge of the matter, that denying the relief sought would significantly impair the child's physical health or emotional development; and

(2) contains facts that support the allegation under Subdivision (1).

(b) Requires the court to deny the relief sought and dismiss the suit or strike the intervention, as applicable, unless the court determines, based on the affidavit, that the affidavit contains facts adequate to support the allegation under Subsection (a)(1).

SECTION 2. Amends Section 153.002, Family Code, as follows:

Sec. 153.002. New heading: BEST INTEREST OF CHILD; REBUTTABLE PRESUMPTION IN SUIT BETWEEN PARENT AND NONPARENT. (a) Creates this subsection from existing text and makes no further changes.

(b) Provides that, in a suit between a parent and a nonparent, it is a rebuttable presumption that a parent acts in the best interest of the parent's child and it is in the best interest of a child to be in the care, custody, and control of a parent.

(c) Authorizes the nonparent, in a suit between a parent and a nonparent, to overcome the presumption under Subsection (b) by proving by clear and convincing evidence that denial of the relief requested by the nonparent would significantly impair the child's physical health or emotional development. Requires the court, if the court renders an order in the suit granting relief to the nonparent, to state in the order the specific facts that support the court's finding that denying the relief requested by the nonparent would significantly impair the child's physical health or emotional development and the extent to which the nonparent has overcome the presumption under Subsection (b).

SECTION 3. Amends Subchapter A, Chapter 156, Family Code, by adding Section 156.008, as follows:

Sec. 156.008. ADDITIONAL REQUIREMENTS IN SUIT FOR MODIFICATION BETWEEN PARENT AND NONPARENT. Provides that, in a suit for modification between a parent and a nonparent, the nonparent is, if required to overcome the presumption under Section 153.002(b), required to overcome the presumption by clear and convincing evidence and prohibited from overcoming the presumption under Section 153.002(b) on the basis of a prior order granting relief to the nonparent if the parent agreed to the prior order.

SECTION 4. Makes application of this Act prospective.

SECTION 5. Effective date: September 1, 2025.

S. Research Center Jurisprudence, Bill Analysis, Tex. S.B. 2052, 89th Leg., R.S., (as filed 6/12/25).